GEORGE C. HARRINGTON, Administrator, etc., Respondent, *v.*
EUGÈNE M. KETELTAS et al., Appellants.

An executor, having notice that there is a debt due the estate, is bound to
active diligence for its collection; he may not wait for a request from the
distributees.

In case the debt is lost through his negligence he becomes liable as for a
*devastavit*.

*It seems*, that if the case is one of such doubt, that an indemnity is proper,
he must at least ask for it; and at any rate he takes the risk of showing
that the debt was not lost through his negligence.

Where the question was as to whether one person received a certain sum
for another, *held,* that a deposit ticket made out by the former, show-
ing a deposit by him of about the same amount on the day of the alleged
receipt was proper evidence.

The statute of limitations does not begin to run in favor of an executor,
as against a claim for damages occasioned by his negligence in collecting
a debt due the estate from the time of the probate of the will, but at
best only from the time of the loss.

Where, therefore, it was claimed that a debt was lost by reason of the
running of the said statute, and it appeared that the will was admitted
to probate in 1870, that the defense of the statute became available to
the debtor in 1874, and his pecuniary ability up to that time was ·
unquestioned, that the executor died in 1876, and that an action against
his executors was commenced in 1878. *Held,* that the action was not
barred by the said statute.

As to whether an executor will be permitted to allege his own wrong
so as to have time run in his favor, or whether each day before his
accounting will not be deemed a commencement of the cause of action, or
he be chargeable for the amount he could have collected as for assets in
his hands, *quære.*

(Argued March 8, 1883; decided March 27, 1883.)

APPEAL from judgment of the General Term of the Supreme
Court, in the first judicial department, entered upon an order
made April 10, 1882, which affirmed a judgment in favor of
plaintiff, entered upon the report of a referee.

This action was brought by plaintiff, as administrator, with
the will.annexed, of Harriet E. Christy, deceased, against defend-
ants, as executors of the will of William M. Keteltas, who was
the executor of the will of said Harriet E. Christy, to recover

the amount of a debt alleged to have been due and owing to her estate at the time of her death from one Smith, and to have been lost through the neglect of the said executor to collect the same.    The referee found in substance these facts : In July, 1868, said Harriet E. Christy sold certain real estate ; said Smith, who was her attorney and counsel, at her request and for her use and benefit, received the purchase-money, to-wit, $29,000, and at the time of her death, which occurred in June, 1870, there remained in his hands of such purchase-money the sum of $20,000.    Said Smith drew the will of Mrs. Christy, who was in feeble health, and relied entirely upon him in legal and business matters ; at his instigation she named said Keteltas, who was a stranger to her, but a client and intimate friend and relative of Smith's, as her executor ; Smith, acting as counsel for Keteltas, filed a pretended inventory of the personal estate of the deceased, omitting therefrom entirely his said indebtedness, which was known to Keteltas, who believed, and had good reason to believe, that Smith was indebted to the amount of $20,000 with accrued interest ; Keteltas neglected and refused to render to the legatees named in the will, or to the surrogate, any account until November, 1874, when under an order of the surrogate he filed an account, in which no reference was made to said indebtedness ; Keteltas wholly neglected to demand of or to receive from Smith said indebtedness, or to attempt to collect the same.    Keteltas died in January, 1876, and in January, 1878, plaintiff was appointed administrator with the will annexed ; as such he commenced suit against Smith to recover said indebtedness, who pleaded the statute of limitations, and in consequence of the neglect and failure of duty on the part of Keteltas, the claim against Smith was barred by said statute, and plaintiff was obliged to discontinue said action.    Further facts appear in the opinion.

*Francis Lynde Stetson* for appellants.    An executor without funds in his hands, and without any offer to indemnify, cannot be required to personally make good the amount of a doubtful and disputed claim, upon the mere ground that he has

neglected to bring suit therefor. (*Griswold* v. *Chandler*, 5 N.
H. 492–494; *Sanborn* v. *Goodhue*, 28 id. 48–58; *Hepburn* v.
*Hepburn*, 2 Bradf. 74.) The referee erred in finding that the
alleged cause of action against the defendants as representatives
of William A. Keteltas, deceased, had accrued within six years
prior to the commencement of the action. (*Argall* v. *Bryant*,
1 Sandf. 98; *Northrup* v. *Hill*, 57 N. Y. 351; *Moore* v.
*Juvenel*, Sup. Ct. Penn., Jan. 19, 1880; 8 Weekly Notes of
Cases; *Sanford* v. *Sanford*, 62 N. Y. 553.) If Smith, subse-
quent to the alleged demand upon him, began to make pay-
ments of interest, or partial payments on account, the statute
would not run in his favor until at least six years after
the last of such payments. (Angell on Limitations, §§ 240–247;
*First Nat. B'k of Utica* v. *Ballou*, 49 N. Y. 155; *Putnam*
v. *Hubbell*, 42 id. 106–113.)

*Ira Shafer* for respondent. William A. Keteltas, the exec-
utor, dying, the plaintiff was properly appointed administrator
with the will annexed. (3 R. S. [6th ed.] 83, § 45.) Plaint-
iff had a right to bring this action under the circumstances dis-
closed by the evidence. (*Walton* v. *Walton*, 2 Abb. [N. S.]
428, 451; *McMahon* v. *Allen*, 4 E. D. Smith, 519, 525;
*Luers* v. *Brunges*, 56 How. Pr. 282, 285; *Petrie* v. *Petrie*,
7 Lans. 90; *Deland* v. *Richardson*, 4 Den. 95.) The defend-
ants are liable, as the representatives of William A. Keteltas,
for the wrongs done by him as executor, and because of his
having "wasted". the estate of Mrs. Harriet E. Christy. (2
R. S. 647, § 1; *Elder* v. *Bogardus*, Hill & Denio's Sup.;
*Potter* v. *Van Ranken*, 36 N. Y. 619, 625; *Heinmuller* v.
*Gray*, 13 Abb. [N. S.] 299, 301, 302; *Haight* v. *Hoyt*, 19 N.
Y. 465, 467, 468; *Smith* v. *N. Y. & N. H. R. R. Co.*, 28
Barb. 605, 607, 608; *Dininny* v. *Fay*, 38 id. 18, 20, 21, 22;
*Bond* v. *Smith*, 4 Hun, 48, 49; *Paine* v. *Elmer*, 7 Mass. 317;
2 R. S. 114, § 6; Bac. Abr., Executors, L.) When the action
was commenced against C. Bainbridge Smith, January 30,
1878, it was barred by the statute of limitations. (*Stafford* v.
*Richardson*, 15 Wend. 302, 307; *Bommer* v. *Am. Spiral*,

*etc., Hinge Co.,* 81 N. Y. 408 ; *Stewart* v. *Smith,* 14 Abb. Pr.
75 ; *Judd* v. *O'Brien,* 21 N. Y. 186 ; *Merritt* v. *Seaman,* 6
Barb. 330, 335 ; *Underhill* v. *Pomeroy,* 2 Hill, 603 ; *Wenham*
v. *Mohawk Ins. Co.,* 13 Wend. 267, 269 ; *Christopher* v. *Garr,*
2 Seld. 61 ; *Sandford* v. *Sandford,* 62 N. Y. 553, 555, 556 ;
*Smith* v. *Newby,* 13 Miss. 159.) The statute had not run
against Keteltas, or his representatives, when the action was
commenced, June 11, 1878. (2 R. S., § 52 ; id. 90, § 43 ; Ang.
on Lim. 298 ; *Wenman* v. *Mohawk Ins. Co.,* 13 Wend. 267,
269 ; *Sandford* v. *Sandford,* 62 N. Y. 553, 555 ; *Munny* v. *East
India Co.,* 5 B. & Ald. 204 ; *Burklin* v. *Ford,* 5 Barb. 393 ;
*Cary* v. *Stephenson,* 2 Sack. 421 ; Ang. on Lim. 54–59.) The
representatives of Keteltas are liable irrespective of the ques-
tion of the statute having run against Smith. (*Schultz* v.
*Pulver,* 3 Paige, 182 ; *S. C.,* 11 Wend. 361, 365.) If property
is wasted through the carelessness or want of proper attention
of an executor or administrator, or debts are not collected
within a reasonable time by personal application or suit, the
law will hold him personally responsible, whether his motives
have been pure or not, and whether or not the delay caused
the loss of the debts. (4 Johns. Ch. 284 ; *Pursons* v. *Mills,*
2 Mass. 80 ; *Mitchell* v. *Lunt,* 4 id. 653, 658 ; *Wakeman* v.
*Hazleton,* 3 Barb. Ch. 148 ; *Keller's Appeal,* 18 Barr. 288 ;
*Wilson* v. *Doster,* 7 Ired. Eq. 231 ; *Williams* v. *Harrell,* 8
id. 123 ; *Skime* v. *Simmons,* 11 Ga. 401 ; *Scarborough* v.
*Watkins,* 9 B. Monroe ; *Nelson* v. *Hull,* 5 Jones' Eq. [N. C.]
32 ; *Holmes* v. *Bridgman,* 37 Vt. 28 ; Wms. on Exrs. 1804 ;
Bac. Abr. Exrs. [L] 1 ; *Tebbs* v. *Carpenter,* 1 Madd. 298, 290 ;
*Lawson* v. *Copeland,* 2 Bro. Ch. Cas. 156 ; *Moyle* v. *Moyle,*
2 Russ. & M. 710 ; *Argall* v. *Bryant,* 1 Sandf. 98 ; *Northrup*
v. *Hill,* 57 N. Y. 351 ; *Moore* v. *Juvenal,* 8 Weekly Notes of
Cases, June 17, 1880 ; 2 Wms. on Exrs. 1064.) The defendant's
point that the onus was upon the plaintiff to show that the
claim could have been collected by Keteltas, is untenable.
(*Walron* v. *Ball,* 9 Barb. 271, 277 ; *Ingalls* v. *Levy,* 1 Cow.
240, 241.)

DANFORTH, J.   The complaint is upon the theory that a cause of action existed in favor of Mrs. Christy, against Smith, for about $20,000, received by him for her use ; that it was a valid and subsisting claim when she died, and that when William A. Keteltas (the defendant's testator) undertook the office of executor of her will, he had notice of it.   If these things were so it was his plain duty to reduce the debt to his possession, as part of the assets of the estate which he represented.   But he took no steps to that end, and allowed time to run in favor of the debtor.   He became, therefore, liable as for a *devastavit*.   (Williams on Ex'rs, vol. 2, p. 1636 [5th Am. ed.] ; *Shultz* v. *Pulver*, 3 Paige, 184 ; 11 Wend. 366.)   And it follows that he having died, his estate should make good the loss.   It has been so adjudged.   It is now objected, however, by the appellants that the money was for the enjoyment of Mrs. Christy during life only, and that no interest passed by her death to her representatives.   It is a sufficient answer that the objection comes too late.   (*Peck* v. *Gurney*, 2 Hill, 605 ; *Judd* v. *O'Brien*, 21 N. Y. 186 ; *Bommer* v. *Am. Spiral, etc., Butt. Hinge Co.*, 81 id. 468.)   It was proven at the trial that the money was part of the proceeds of certain real estate, bought by one Cowdin ; that the amount in question was the residue of the share of Mrs. Christy, and was received by Smith " for her," and by stipulation between the parties it was agreed that certain " conveyances " referred to in the case, but not set out, " constituted evidence showing that Harriet E. Christy's share of the purchase-money of the premises described " therein " was $34,000." It may be that other evidence tended to qualify her estate, but if so, it by no means follows that had the objection been urged, still other evidence might not have been produced to answer it.   At the trial the objections to the recovery were, " *first*, that the facts proved do not constitute the cause of action stated in the complaint ; *second*, do not constitute any cause of action in favor of the plaintiff against the defendant ; and, *third*, that there is not sufficient evidence to raise any question of fact for a jury."   There was no request to the referee to find upon the point, now presented,

nor was it adverted to. To be available to the defendant it should have been specifically stated. (*Bills* v. *N. Y. C. R. R. Co.*, 84 N. Y. 15; *Spears* v. *The Mayor*, 87 id. 359.) A careful examination of the record shows that the trial was conducted throughout upon the theory that such money as Smith received was for Mrs. Christy, and that he was accountable to her for it. The idea that the interest or income only belonged to her, and the principal to remaindermen, was not once suggested. Indeed, the trial proceeded upon the theory enunciated in the complaint that the money was her money — that is altogether hers — and for aught that appears it was assumed by both parties that it was the value of her interest in the land, whatever it might be, the defendant raising no question as to its character. It is also urged by the appellant that Keteltas was not required to proceed against Smith until indemnified by the parties interested. There is no such rule of law. It may be that an executor is not bound to prosecute a doubtful claim merely because those interested think it well founded, but an executor with notice that there is a debt due the estate is bound to active diligence for its collection, and must proceed without waiting for the request even of the distributees. If the case is one of such doubt that indemnity is proper, he must, at least, ask for it, and at any rate takes the risk of showing that the debt is not lost by his own negligence. (*Schultz* v. *Pulver*, 11 Wend. 363; *Stiles* v. *Guy*, 16 Simons, 229.) Here, however, there is evidence not only of neglect, but of willful default, amounting to positive collusion with Smith, in permitting the latter to retain the debt upon his assurance that "the claim would soon be outlawed," and that "if he had to pay any thing on it, he" (Smith) "would make it all right with him" (Keteltas). There is, therefore, no merit in the position that he should have been indemnified also by the other side. It is not even plausible. By accepting the trust he came under an obligation to perform it with diligence, and neither the omission of those interested to proffer indemnity, nor the assurance of the debtor, should excuse him from the consequence of neglect.

It is urged, however, that incompetent evidence was received by the referee upon the question of Smith's indebtedness to Mrs. Christy. The complaint stated that the money was received by him on the 30th of July, 1868, and it must be presumed that in opening the case to the referee, the circumstances surrounding the transaction, and afterward disclosed in evidence, were presented by the plaintiff's counsel. Among them were the source from which the money was derived, its form, its disposition, and the relation which Smith sustained toward it, and toward Mrs. Christy. Her share was part of a large sum received by Smith and others, and it was material to show Smith's individual control of the portion going to her. It was not necessarily to be established by one item of evidence, and the order of its introduction was in the discretion of the referee. When, therefore, at the outset of the case the plaintiff proved by the teller of the Fulton Bank that Smith was a depositor in that bank, and that the witness then had, from the files of the bank, a deposit ticket of July 30, 1868, written by Smith, himself, on that day, it was not irrelevant to the issue. It was Smith's declaration that he deposited in the Fulton National Bank, July 30, 1868, $31,075.30 in bills, and although not sufficient to prove that he did, in fact, make the deposit, its tendency was that way, and, with other circumstances, indicated that he exercised control over a sum of money, shown, by other evidence, to be about equal to the money received by him at an earlier hour, on the same day, and in bills, for Mrs. Christy. The deposit ticket was, therefore, properly admitted.

But rejecting this evidence, the liability of Smith to Mrs. Christy was conclusively established, and the referee justified in finding that Keteltas (her executor) believed such indebtedness to exist when in June, 1871, he filed what purported to be an inventory of her personal estate. It exhibited articles of small value, amounting in the aggregate to less than $200. It was prepared by Smith as the attorney for Keteltas and contained no allusion to the money due from him. Keteltas says Smith told him " he was Mrs. Christy's attorney before her

death, and prepared her will and named him as executor." He adds, "he told me there was money in it." "I understood that the estate was quite large; worth about $30,000;" this "was hearsay;" he got that impression "from what Smith had said." He also says, "Mrs. Christy while she was living had been in the hands of Smith; he appointed me in her will as executor, and her estate being in his hands he went on with the business for her estate, she being dead." He never "asked any investigation to ascertain what property Mrs. Christy left," and he went to no one other than Smith to inquire, nor asked any other person about the assets, and although he says he "asked Smith to make out an account," he "never inquired what he had received or paid out."

Mrs. Christy died in June, 1870, and the next winter Miss Wright, one of the beneficiaries under her will, called upon Keteltas, and he says, "he referred her to Smith," and she replied, "she could get no account from him." The testimony of Miss Wright as to this interview is explicit. She asked for money and he said, "he had no money of mine * * * that Smith had some money." She said, "Yes, he must have $30,000 at least." He said, "he supposed it was so, but thought Smith had settled that long ago." She replied, "he had not done any thing about it." Upon cross-examination the witness gives a somewhat fuller account of the interview, and says that Keteltas asked, "Is not that settled yet? and I said no, sir, we have not got any thing from it at all. He then spoke about being executor, and said he would see Mr. Smith. I said there was a great deal of money there and I think it strange we do not get it, and he said, yes, I think there was; and I told him I had an idea it was over $30,000; and he said, I think, I am not positive, he said thirty, I think it was about $30,000; he knew there was money there, and thought it was strange that we had never received any thing."

Q. "Money, where?" A. "In Mr. Smith's hands." Q. "Did he not say, 'I thought Mr. Smith had settled that long ago?'" A. "Yes." Q. "You said nothing?" A. "I said he had not settled, of course." Birdsall, a lawyer, in the latter

part of 1870, or winter or spring of 1871, called upon Keteltas at the request of one of the legatees under the will, and says, "he seemed to be annoyed about it, and professed not to know any thing about it, and said that it was altogether in Smith's hands, and that he knew all about it, and that he, Keteltas, did not." "I then said to him that inasmuch as he was the executor, he was the only one the children had to look to, and it was better for him to look into it, as they proposed to have what was their rights." Nothing was accomplished at that interview, but soon after the conversation was renewed, when the witness presented to him a memorandum containing statements of items given to witness by Smith, showing that there was due to Mrs. Christy's estate somewhere between $20,000 and $21,000. Keteltas replied that Smith had given him to understand that there was little or nothing in the estate. "I told him," says Birdsall, "that was not so, and that from the statements he (Keteltas) had made to me, I believed Mr. Smith was deceiving him in the matter. A few days after that I met him in the street and asked if he had seen Smith, and he then said Smith had told him there was nothing left of the estate, and it was all bosh, and he believed Smith and he would be damned if he would bother himself any thing more about it." Q. "Did you tell him what his liability would be?" A. "I told him he would be held liable for the whole amount of that money if he did not get it out of Smith's hands. He said that Smith had been his counsel for many years, that he had married a relative of his, and that he believed his statements."

Upon a further examination of this witness it appeared that in a conversation with Keteltas, he stated to him that he had seen the papers relating to the matter, "and if he would call upon Mr. Cowdin he could see the check indorsed by Mr. Smith for the money that Mr. Smith admitted he had in his possession, and asked Keteltas to go to Mr. Cowdin's office and see the papers; he said he did not care to see them."

There is enough in these statements to warrant the conclusion that Keteltas had information sufficient to excite a belief in the indebtedness of Smith to the estate of Mrs. Christy,

and warning enough to put him to the exercise of vigilance in recovering it, but that notwithstanding this he suffered Smith to retain possession of the money. Undoubtedly Keteltas also stated, as the counsel for the appellant claims, that he would have tried to get the money from Smith if he had known that he had any belonging to Mrs. Christy's estate, that he had asked Smith over and over again "what moneys he had received from Mrs. Christy during her life-time, and he said there was not a copper." But in view of the testimony to which I have adverted, it is plain that Keteltas poorly performed the duty of executor; in fact he did not perform it at all, when he relied upon the assurances of Smith in the face of positive information, not only that the debt did exist, but that Smith admitted its existence. We agree, therefore, with the referee and the General Term in the conclusion that with good reason Keteltas believed Smith was indebted to Mrs. Christy in the sum of $20,000; that he failed to demand it from him and suffered him to retain possession of it. Nor was there error on the part of the referee in refusing to find that Smith denied to Keteltas his liability. There are words, as we have seen, which would have justified that finding, but the referee was to look at the whole testimony, and was not bound to credit the statement, nor could he in any just sense have found that upon any serious demand by Keteltas, there had been a denial.

The lapse of time will not aid the defendant: First, the liability of Smith accrued as early as August, 1868, and no point was made upon the trial that by payment or otherwise he had prevented the statute of limitations from running against it. He indeed paid money to Mrs. Christy in small sums from time to time, but there is no finding that the payments related to the debt involved in this claim, nor as to the time of payment, nor was any request to find in these particulars presented to the referee. The complaint alleged that the statute became a bar by reason of the neglect of Keteltas to prosecute Smith, and at the close of the evidence, although the

defendant moved to dismiss the complaint, there was no suggestion that this averment was not proved, and aside from the general grounds taken on that occasion, and above adverted to, it was only insisted that the cause of action against Keteltas accrued more than seven and one-half years before the commencement of the suit, viz., on the 3d of December, 1870 — that being the time the will went to probate. Second, it is again claimed by the appellant that the plea of the statute of limitations to the cause of action against Keteltas was sustained. This also is unfounded. The statute was available to Smith in August, 1874. His pecuniary ability up to that time has not been denied. Then at all events Keteltas became liable to account to the beneficiaries under the will for the amount uncollected from Smith, to the same extent precisely as if he had received and actually held the money. There was no period after that until his death, when he ceased to be liable. He died on the 16th of July, 1876, and the liability was transferred to his executors. (2 R. S. 114, § 6, title 5, p. 11, chap. 6; *Walton* v. *Walton*, 2 Abb. [N. S.] 428.) This action was commenced on the 11th of June, 1878, manifestly less than six years from the time the statute run in Smith's favor.

It is unnecessary, therefore, to consider whether after a greater lapse of time an executor would be permitted to allege his own wrong so as to have time run in his favor from the beginning of his neglect, or whether each day before accounting would not be deemed the commencement of the cause of action, or he be chargeable for the money he might have collected, as for assets in his hands.

The cause was properly disposed of by the referee and General Term, and the judgment appealed from should be affirmed, with costs.

All concur.

Judgment affirmed.