In the Matter of the Assignment of ALLSTON GERRY *et al.*, to EDWIN R. WIGGIN *et al.*, for the Benefit of Creditors.

(Decided December 28th, 1885).

Assignees under a general assignment for benefit of creditors are not properly chargeable, as for a loss to the assigned estate, by reason of their failure to prosecute an action for alleged false and fraudulent representations made to the assignors by a vendor to them of certain shares of stock, where it does not clearly appear that he knew such representations to be false, nor that they were false in fact, nor that there was any artifice or intent to deceive the assignors on his part, nor that such representations were the inducing cause of their purchasing the stock; and where it is not shown that the assignees were ever informed of the representations, or that there were any facts within their knowledge sufficient to put them on inquiry as to the circumstances of the purchase.

APPEAL from a decree of this court confirming the report of a referee upon a final accounting by assignees under a general assignment for the benefit of creditors.

The facts are stated in the opinion.

*W. R. Beach*, for the creditors, appellants.

*Beach & Brown*, for the assignees, respondents.

*L. B. Clark*, for Edwin R. Wiggin, individually.

ALLEN, J.—This is an appeal by certain objecting creditors from the final decree confirming the referee's report, and passing the accounts of the assignees in the above entitled matter, in so far as it has adjudged that the assignees are not properly chargeable for any loss to the assigned estate by reason of their failure to prosecute any action against the vendor of certain shares of the capital stock of the Loaners Bank, which were purchased by the insolvents for the sum of $50,000 and transferred to them prior to their assignment, and in so far as said decree adjudges, as matter of fact, that the said assignees had no knowledge of

nor information sufficient to put them upon inquiry as to the facts and circumstances attending the purchase of said stock by the assignors, or the fraudulent representations made by the vendor thereof, whereby said purchase was induced.

The question to be considered is, whether the court below erred in refusing to charge the assignees with the sum of $50,000 by reason of what appears in the proof in reference to the transaction between the assignors and the vendor of said shares of the stock of the Loaners Bank.

We think the decree ought to be affirmed, for the following reasons:—

*First.* It does not appear by the evidence to be clearly established that a valid cause of action existed in favor of the said assignors against Russell, the vendor of the stock.

In the month of October, 1875, after the suspension of the assignors and prior to their assignment, the assignors purchased from Russell, then President of the Loaners Bank, for the sum of $50,000, 1250 shares of its capital stock, upon which forty per cent. of its par value had been paid. The purchase was made by Colwell, one of the assignors, on behalf of his firm. At the time of the purchase Russell furnished to Colwell a statement which purported to show the then condition of the bank; which said statement Russell then stated to said Colwell to be true, and that the collaterals owned by the bank were good. No examination or inquiry was made into the condition of the bank by Colwell or any member of his firm, nor any inquiry made as to whether the statement of Russell was true. Soon after the said purchase of said stock Colwell and Gerry (another of the assignors) became officers and directors of said Loaners Bank, and never thereafter made any investigation as to its condition or solvency. The bank failed, and passed into the hands of a receiver, in May, 1876, and the collateral owned by the bank at the time of the purchase of the stock by Gerry, Tilton & Colwell proved worthless. Gerry testified before the referee as follows:—
" We thought that purchasing control or buying the stock

of that bank would not only give us business in the future but also facilitate us in our settlement with our creditors." Again:—" One object of purchasing the stock was to give us future business. I have no doubt that I looked forward at that time to receive a salary from the bank in the future."

The above is a statement of the facts established by the proof, which bear upon the question of Russell's liability to the assignors for false and fraudulent representations. Russell furnished to Colwell a statement which purported to show the then condition of the bank; which statement Russell then stated to said Colwell to be true, and that the collaterals owned by the bank were good. This written statement is not in evidence; so that the representations made by Russell, as shown by the record, were that the collaterals owned by the bank were good. To establish a cause of action against Russell it must appear that the representations were false in fact, and must have been known to him, when he made them, to be false, or he must have had reason to believe them to be false; and they must have been made with an intent to deceive the assignors and must have been relied upon by them and have been the inducing cause of their purchasing the stock. It does not clearly appear that Russell knew these representations to be false; nor does it clearly appear that they were false in fact. These representations were made in October, 1875. The collaterals which were good in October, 1875, might not have been good in May, 1876; or the statement might have been an expression of opinion as to their value, and Russell may have honestly considered them to be good. Nor does there appear to be any proof of artifice or intent to deceive the assignors on the part of Russell. No means were employed by him to prevent inquiry on the subject of the collaterals, and there was no refusal to show them. The assignors took no pains to acquire any knowledge on the subject, either at that time or subsequently when they became officers of the bank. Their proceedings indicate a desire to own the stock so that they might get salaries and make business or obtain money to settle with their credi-

tors, and not any very great concern as to whether the stock was worth what they were paying for it. Therefore, it does not appear clearly whether the representations were the inducing cause of their purchasing the stock or whether their desire to get control of the bank, where they might have offices and salaries and the use of its funds, led to the purchase.

I do not think there is enough in the proof presented to show that the assignors had a valid cause of action against Russell by reason of this transaction in reference to these shares of stock.

" The party seeking to establish a cause of action or a right to a remedy against another, based upon an alleged fraud, must show, affirmatively, facts and circumstances necessarily tending to establish a probability of guilt. If the evidence is capable of an interpretation equally consistent with innocence as with guilt, the former meaning must be given to it " (*Morris* v. *Talcott*, 96 N. Y. 100).

*Second.* Assuming that a cause of action did exist against Russell, the creditors have not shown affirmatively that the assignees had any knowledge of it. The referee has found as follows on this subject:—

" That none of the facts and circumstances attending the purchase of said stock by said firm of Gerry, Tilton & Colwell, or any of the representations made by the vendor thereof, were communicated to the said assignees, nor had they any information thereof, nor were said assignees at any time or by anybody furnished with any evidence as to what representations were made by the vendor to the vendees of said stock at the time of said purchase, or that they were fraudulent." This finding is sustained by the evidence.

Bacon testifies that neither of the assignors told him that any representations whatever were made at the time of the purchase. Wiggin says he did not know from whom the stock was purchased or who negotiated for it. Gerry and Colwell, assignors, testify that the assignees were never informed of the representations of Mr. Russell. This testimony is not contradicted, and there appears to be no reason

for disbelieving it.   Even if there was fraud in the transaction between Russell and Colwell, there were no facts within the knowledge of the assignees sufficient to put them on their inquiry in reference to the circumstances of the purchase.   Whenever the assignors talked with the assignees upon the subject they always insisted that the purchase was a good one.   They said they had "made a good trade" for themselves; that the purchase was a good one; that they "could get that money out of it, and more too."   They said their object in purchasing was to get salaries from the bank.   And the assignees were aware of the fact that one of the assignors (Colwell) was getting a salary from the bank.   They claimed that $50,000 could be realized on the stock for the purpose of settling with creditors.   The assignors were always, up to the time of the failure of the bank, claiming that they had acted wisely and prudently in purchasing the stock, and never intimated that there was any fraud or misrepresentation connected with the original purchase.

The cases of *Hollister* v. *Burritt* (14 Hun 291), *Harrington* v. *Kittlelas*, (92 N. Y. 40), and *Parker* v. *Connor* (93 N. Y. 118), have no application to the case before us.   In the first two cases there was actual notice of the existence of the claim, and in *Harrington* v. *Kittlelas*, Kittlelas was not only notified of the claim but asked to enforce it, and neglected to do so.   The case of *Parker* v. *Connor* is an authority against rather than in favor of the views presented by the appellant.

We think, therefore, that the opposing creditors have failed to establish clearly, first, the validity of the claim against Russell; second, that the assignees had any knowledge of a cause of action against Russell or were in possession of facts sufficient to put them upon an investigation or lead them to suspect that any such cause of action existed.

The decree appealed from should be affirmed, with costs.

CHARLES P. DALY, Ch. J., concurred.

Decree affirmed, with costs.