IN THE MATTER OF THE ASSIGNMENT OF REYNOLDS CARPENTER AND ANDREW P. CARPENTER TO GEROTHMAN W. CORNELL.

*General assignee—when liable for his neglecting to attempt to recover property fraudulently transferred and the surplus of collaterals, pledged by the assignor before the assignment — when payments for taxes on property encumbered beyond its value, which payments operate to benefit the assignee, will be disallowed.*

Upon an accounting by the defendant Cornell, an assignee for the benefit of creditors, who had been removed upon the application of creditors of the assignors, the referee found that he should be charged with $71,137.62 mainly for negligence in respect to property transferred by the assignors before the assignment was made, and which was not reduced to possession by Cornell. The county judge being disqualified, the proceedings were transferred to the Supreme Court and heard at Special Term, that court sustained objections taken to the admission by the referee of evidence relating to such transfers or assignments, and struck out all the evidence taken by him "relating to such acts and proceedings of the assignors prior to the making of the general assignment," and reduced the amount for which Cornell had been held liable by the referee.
*Held*, that it erred in so doing. (BOCKES, J., dissenting.)
*Matter of Raymond* (27 Hun, 508) distinguished.
The referee found, in regard to several insurance policies, which constituted a large part of the property in question, that they had been transferred by the assignors to persons claiming to be creditors, as collateral security, and that there was a surplus above the amount for which the policies were held as collateral.

*Held*, that whatever doubt there might be in the mind of the assignee, whether he should attempt to set aside a transfer of property on the ground that it had been made in fraud of creditors, there could or should be none as to his duty to recover any surplus arising from collaterals held by a creditor after payment of the debt.

That the failure of the creditors or of the substituted assignee to take steps to recover the property was no defense to Cornell.

That, an objection that the question of fraudulent transfer could not be litigated without making the fraudulent holders parties to the accounting was not valid, as it was proper, when inquiring as to the fidelity of the assignee, to prove what property he might have reduced to possession if he had made the attempt, although the holders thereof could not be made parties to the accounting and would not be bound by the judgment entered thereon.

The Special Term allowed the assignee a credit of $445.95 for taxes paid on real estate, and twenty-eight dollars for interest on a Sweet mortgage, which had been disallowed by the referee. It appeared that real estate of the assignors, inventoried at $40,000, was encumbered by three mortgages, the first claimed to be held by Sweet (the amount secured by which did not appear); the second by Robinson, originally for $20,000, but reduced by payments, as Cornell knew, to about $5,000 or $6,000, and the third by Cornell for $5,000. After advertising, Cornell sold the property to Robinson for twenty dollars, subject to the payment of the last two mortgages, no reference being made to the Sweet mortgage.

*Held*, that as it appeared that the property was mortgaged for more than it was worth, and that Cornell held the last mortgage thereon, the payment of the taxes and interest was practically a payment for Cornell's individual benefit and should not have been allowed to him.

APPEAL from an order of the Supreme Court at Special Term, made April 9, 1886, and entered in the Rensselaer county clerk's office, *nunc pro tunc*, as of November 3, 1884, and from said order as modified and resettled May 1, 1886, which said orders modify, and confirm as modified, the report of Orin Gambell, Esq., a referee appointed by the Rensselaer County Court to take and state the account of Gerothman W. Cornell, who had been removed by order of the court from his position as assignee of the firm of R. Carpenter & Co., consisting of Reynolds and Andrew P. Carpenter, under a general assignment for the benefit of creditors.

Reynolds Carpenter and another made a general assignment, March 17, 1876, to Gerothman W. Cornell. On the petition of Bliss & Allen, creditors of the assignors, an order was made by the County Court, November 6, 1880, removing Cornell and appointing Francis N. Mann assignee in his place. Prior to the making of

this order Cornell had applied to the County Court for a final accounting. Under that order the accounting, which had been suspended, was continued before a referee. Such accounting commenced September 29, 1881, and the referee's report was made June 13, 1884. By this report the referee found that Cornell should be charged with $71,137.62, mainly for negligence in respect to property transferred by the assignors before the assignment, and not reduced to possession by Cornell. The county judge being disqualified, the proceedings were transferred to the Supreme Court, and the matter was heard before the Special Term November 3, 1884. The counsel for Mann and for Bliss & Allen moving to confirm, and the counsel for Cornell and for Barker, an executor of one of Cornell's sureties, moving to modify the report. The Special Term modified the report and held Cornell liable for a much less sum. Cornell having died after the assignment, the order was entered *nunc pro tunc*. Bliss & Allen appeal.

The facts of Cornell's death after the argument and of the entry of the order *nunc pro tunc* appear in the order. It appears that an order was made continuing the account against the administrator of Cornell. The referee reported the evidence and found facts, and exceptions were taken. The Special Term sustained the exceptions taken by Cornell and Barker, struck out all evidence taken by the referee " relating to such acts and proceedings of the assignors prior to the making of the general assignment," that is, relating to the transfers or assignments of property by the assignors, and found that on the evidence " now in the case " Cornell was not chargeable with negligence in omitting to take proceedings to obtain possession of such property.

*James Lansing* and *E. Countryman*, for the appellants.

*Levi Smith* and *R. A. Parmenter*, for the respondents.

LEARNED, P. J. :

This proceeding is taken under chapter 466, Laws of 1877 (§ 20, subs. 1 and 3). It is not quite clear what the practice in such cases should be, whether the report of the referee authorizes the entry of an order thereon, or whether the matter is to be reheard by the county judge (in this case the Special Term). The parties here

have followed the practice of having the matter reheard on its merits by the Special Term upon exceptions taken to the report.

The important points on which the parties disagree are these: 1st. Whether Cornell was in fact negligent in failing to reduce to possession certain property previously transferred by the assignors, or in not attempting so to do. 2d. Whether he can be held liable for such alleged negligence in this proceeding. 3d. Whether the inaction of these creditors and of the new assignee since Cornell's removal affects his liability, if any existed.

Now we understand that, as the case was heard before the Special Term, all evidence tending to show that Cornell was negligent in the respect above stated was stricken out and excluded as incompetent, although it is printed in the case before us. We are, therefore, unable to know whether the Special Term would not, on the whole evidence, have found, as the referee had done, that Cornell was in fact negligent. That such was the view taken by the learned justice is apparent from his opinion, which does not examine the facts in detail or discuss the question of actual negligence.

The learned justice in his opinion relies largely on a case decided in this court. (*Matter of Raymond*, 27 Hun, 508.) In that case the assignor, prior to making his general assignment to the assignee, had given him a bill of sale of some personal property, with intent to defraud the assignor's creditors. The assignee had been removed and another appointed in his place. It was held that on an accounting of the original assignee he could not be charged with the value of the personal property thus fraudulently transferred to him. The point involved, therefore, was not whether the assignee could be held liable for neglect in failing to sue for, and recover from third parties, property rightfully belonging to him as assignee. And it was said in the opinion: " The neglect of the assignee in a proper case to bring the necessary action against a third party to set aside such a fraudulent transfer might make him liable to the extent of the loss sustained." Thus the opinion expressly admitted the right of creditors to charge the assignee with such neglect as is here charged. But the difficulty in that case was that the creditors sought to charge the assignee with property transferred to him and claimed by him in his own right. That principle, if adopted, would enable creditors, on a

mere accounting, to attack any purchase made long before by the assignee of the assignor. We thought no such principle necessary, since the new assignee, or the creditors themselves, had sufficient remedy by action. The views stated in that case are in harmony with remarks made in *Matter of Holbrook* (99 N. Y., 546). This court, however, has not held that on the accounting of an assignee a creditor could not show that the assignee had been negligent in failing to recover property fraudulently transferred to others. We remarked in the case above cited that "the question of his liability in such a case would plainly involve considerations other than the mere amount of property alleged to have been fraudulently transferred. It would involve the assignee's knowledge that the transfer was fraudulent and the prospect of such a recovery as would be beneficial to the estate."

The case of *Haight* v. *Brisbin* (100 N. Y., 219), though the principal points was as to the necessity of an accounting before action against sureties, yet shows, by what is incidentally said, that for such neglect of an executor he may be charged on said accounting. (See, also, Williams on Exrs., 180.) *Harrington* v. *Keteltas* (92 N. Y., 40); *Daly's Estate* (1 Tucker, 95); *Schultz* v. *Pulver* (11 Wend., 361); Laws 1858, chapter 314, gave power to assignees to disaffirm, resist and treat as void all acts done, transfers and agreements in fraud of the right of any creditor. If the assignee has this power, then an improper and unreasonable refusal or neglect to exercise it must be a violation of his duty; and for a violation of duty we see no reason why he may not be made to respond on an accounting. In saying this, we are far from saying that every refusal or neglect to exercise this power would be a violation of duty. We have above pointed out that the question of the assignee's duty, in each case, involves an inquiry into the assignee's knowledge and into the prospects of a recovery beneficial to the estate; and an assignee should not be held liable, unless on plain evidence of neglect. We must notice, too, that this matter of neglect must be judged as it appeared, or might have appeared, to the assignee at the time, not as it may appear upon subsequent and labored investigation. But the difficulty we meet is that the learned justice held that neither the referee nor the court had authority or jurisdiction to investigate, adjudge or determine the question as to the

validity or invalidity of transfers or assignments, made by assignors to third persons previous to the execution and delivery of their assignment to Cornell, and he rejected and struck out all evidence relating to such acts as incompetent, and illegally and improperly received.

Now, of course, it would be impossible to examine whether Cornell had been negligent in not endeavoring to recover property thus transferred, without first proving the circumstance of the transfer. Such proof alone would not show negligence, but without it, no duty could be shown to arise; and on the evidence " now in the case," that is, remaining after striking out the evidence as aforesaid, of course it followed that no negligence was shown. But, further, the referee found, in regard to many of the insurance policies, which constitute a large part of the property in question, that they had been tranferred to creditors (as it was claimed), as collateral security, and that there was a surplus above the amount for which the policies were held as collateral. Clearly this surplus was property which belonged to the assignors, and should have been collected by Cornell. In those instances no question arose as to setting aside fraudulent conveyances, made by the assignors prior to the assignment. If those transfers were collateral to debts of the assignors, then, when those debts were paid, any surplus belonged to the assignors, and after the assignment to Cornell, the assignee. A neglect to take such surplus, or a permitting Hiland Carpenter wrongfully to appropriate it, would be a violation of duty for which the assignee would be plainly liable. Whatever doubt there might be in the mind of the assignee, whether he should attempt to set aside a transfer of property on the ground that it had been made in fraud of creditors, there could be, or should be, no doubt as to his duty to recover any surplus, arising from collaterals, held by a creditor; after payment of the debt such surplus passed to the assignee. And in regard to transfers claimed to be fraudulent, it is said by the learned justice that " it must necessarily be left to the discretion of the trustee whether, and to what extent, he should involve the trust estate in litigation " in such cases. This is undoubtedly true. But for the trustee to exercise his discretion is one thing, to neglect to use any discretion at all is another. Negligent inaction is not discretion.

It is urged that the inaction of the creditors, Bliss and Allen, to take steps themselves to recover this property is a defense to Cornell. We think not. Cornell was their trustee; bound to faithful discharge of duty, for their benefit. He had taken the property of their debtor and thus had, to some extent, deprived them of the opportunity of collecting their debt therefrom. It has never been held that a trustee was not liable for breach of trust, because his *cestui que trust* might have brought an action to redress the wrong done to the trust estate.

Again, it is said that the new assignee might collect this property, and, therefore, the beneficiaries are not injured. Of course, there may be cases where a short delay or neglect of an assignee to reclaim property which belongs to him may work no real injury, and where a new assignee may be able to recover all that belongs to the estate. But the circumstances here are very different. If an assignee, by continued negligence, permits the original property to pass into the hands of persons who have no claim thereto, it is a poor excuse to say that a vigilant assignee substituted for him may recover it back. And it must be noticed that these creditors, Bliss and Allen, applied for the removal of Cornell in October, 1878, and it was on this application that he was finally removed, upon the ground of neglect of duty, and a new assignee appointed. Cornell opposed the removal and endeavored to retain the trust.

The assignee urges that the question of fraudulent transfer cannot be litigated here without making the fraudulent holders parties. They cannot be parties to this accounting, nor does it bind them; but yet it must be proper, when an inquiry is made as to the fidelity of the assignee, to prove what property he might have reduced to possession if he had made the attempt. And it is evident from the findings of the referee that his conclusions as to the negligence of the assignee in these several instances are partly based on the general manner in which the assignee conducted the business of the trust, leaving a son of one of the assignors to retain possession of papers and books, and to act in regard to matters of the trust, by reason of which the books were eventually destroyed by another son; mingling the trust moneys with his own, and in other ways neglecting his duty. This view of his negligence was taken by this court in the opinion written by BOCKES, J., on a former appeal, and such

negligence is very apparent on an examination of the case. And when we find this general neglect of duty, we are justified in characterizing thereby the particular instances which the referee has specified.

The referee has charged the assignee with these several amounts and with the interest thereon. To this interest the counsel of the assignee objects. But it is to be understood that this interest represents the interest which the assignee might have recovered from those who held money belonging to the estate. If surplus moneys above the debts were received on the policies held as collateral, and a demand had been made for it, the assignee could have recovered interest.

The referee has disallowed a credit of $445.95 taxes on real estate and twenty-eight dollars interest on a Sweet mortgage, and this disallowance the Special Term reversed. The facts appear to be that Sweet is claimed to have held a first mortgage, Robinson a second, Cornell himself a third. Robinson's was originally $20,000, reduced by the time of the assignment to $5,000 or $6,000 by moneys collected on policies, as Cornell knew. Cornell's was $5,000. The amount of Sweet's does not appear. The property was inventoried at $40,000. After advertising it, Cornell, as assignee, sold it for twenty dollars to Robinson, subject to the payment of the amount payable on these two mortgages. Nothing is said in the deed of Sweet's mortgage. Robinson afterwards agreed to sell the land to Hiland Carpenter for the amount of these two mortgages and any indebtedness of the assignors to Robinson or his firm. In the assignee's account he states that, at the time of the assignment, this property was mortgaged for more than its actual value. Thus Cornell, having in his own right the last incumbrance, instead of paying the taxes from his own funds and thus adding to his own claim on the land, paid the same from the assigned estate, when the property would bring only twenty dollars above the incumbrances. If he had not been personally the holder of the subsequent mortgage, it would be unjust not to allow him for the taxes paid, unless it was clearly shown that the payment was unwise. But when he was the last mortgagee, it is plain that this payment is practically a payment of money for his individual benefit. He should have paid it from his own funds. Then, if the property had sold for

enough, he would have been reimbursed. We think the referee was right.

The referee has, in detail, found the facts in each instance on which he holds the assignee negligent. The Special Term has not found to the contrary upon any of these facts, except as the result of excluding all the evidence. We are of the opinion, as above stated, that this evidence was competent, and, on a careful examination of it, we think the referee's findings were correct, except as mentioned hereafter. On such a hearing as this, perhaps, the same degree of conclusiveness should not be given to the findings as on a trial; but something of that is due to one who saw and heard the witnesses. And we cannot say that his conclusions in this case are "manifestly against or contrary to evidence" (*Sherwood* v. *Hauser*, 94 N. Y., 626), especially when the Special Term, to whom properly belongs the duty of passing upon these facts, saw no ground to find differently from the referee on the whole evidence.

In the twelfth finding of fact it appears that there is a clerical error made by deducting the amount received on one policy from its face value instead of its adjusted value. This reduces the amount charged against the assignee under that item from $3,015.67 to $2,646.83.

In the fourteenth finding of fact the assignee is charged with the difference between the adjusted value of policies, $94,118.16, and the adjusted value of those shown to be assigned as collateral, $79,004.25, less the amount $6,831.32, with which the assignee charged himself. In regard to the total adjusted insurance, it is stated in the schedule attached to the assignment, and again is stated by the assignee in his schedule "A" filed on the accounting. It is, therefore, reasonable to take this amount as a starting point and to require the assignee to show where is the residue of the adjusted value of policies not shown to be assigned, unless we can find proof that this residue had been assigned before the general assignment. The counsel for the assignee claim that this deficiency is explained by the assignment of policies to Barker. No collateral security held by him is mentioned in the schedule attached to the assignment. The assignor's ledger shows a balance due from him of $5,000, and the referee does not pass upon the validity of this amount. But the referee, in his thirty-eighth finding, does find

that Barker held about $11,000 insurance policies collateral. The adjusted value of these would be over $9,000. Now, as the inventory does not mention that Barker had any policies as collateral, and as the charge in this fourteenth finding rests upon the deficiency above stated, it seems to us that the referee's thirty-eighth finding is a sufficient explanation of this supposed deficiency.

We have examined the evidence in regard to the several findings of the referee in regard to the whole case. It cannot be necessary to go over it in detail. With the exceptions above stated, we are of the opinion that the report was correct, and should be affirmed. The modifications consist in reducing the charge of $3,015.68 to $2,646.83, with interest; in striking out the item of $8,282.58 and the interest thereon. Cornell must not be allowed the $473.95 taxes and interest, as allowed by the Special Term.

The order of the Special Term must be modified in accordance with this opinion. No costs to either party.

LANDON, J., concurred; BOCKES, J., dissented, concurring in the opinion of the Special Term.

Order of Special Term modified in accordance with opinion, without costs. Order to be settled by LEARNED, P. J.