Barnard, P. J.
The belief of the executor as to the gift of the two Jersey City bonds by the testator to Mary Ann Murphy, is only important if supported by the evidence.. This evidence only shows that a few weeks before the death of John McEvoy, the testator, he gave two coupons from these bonds to the executor to collect. These coupons-are accounted for. -At the death of McEvoy the house-was in the possession of Miss Murphy. She was a favorite niece of and housekeeper for the deceased. The executor' made a fruitless search for the bonds. At first Miss Murphy denied having them, but subsequently told the ex -. ecutor that her uncle had given the bonds to her before bis death. The coupons were handed to the executor by Mary Ann Murphy. She excused the falsehoods she had told as to the possession of the bonds in these words: “She said she didn’t tell me because she was afraid she wouldn’t get the money.” Upon this proof the executor, as plaintiff, could not recover the bonds. A title by gift is shown so-far as respects the executor. The surroundings justify a gift. The testator said when the coupons were given that- “ he wanted Mary Ann to have everything; he spoke in the most affectionate terms of her, that he could not reward her sufficiently.” The opinion of the executor as to the title in deceased rests on no sufficient evidence of title at the time of the death of testator.
After stating the delivery of the coupons he proceeds to say, “I had the impression that he was the owner.” Presumably he was in the absence of proof of a gift, but. the gift of the bonds may have been complete then or they may have been given afterwards.
The executor had no proof, and his attorney advised him that he “had no cause against Mary Ann Murphy in reference to these bonds.”
The executor is therefore held personally, because he did not bring an action without proof and rely on the hope that Miss Murphy would confess upon the trial the larceny of the securities. There was no motive for a falsehood on her part. She was entitled to the bonds as residuary legatee, and when she asserted her claim as donee the advertisement for claims brought forward nothing to impeach her right to them as residuary legatee. The present claim was *893 for a deficiency upon a mortgage subsequently foreclosed of which neither the executor or herself knew anything. It seems, therefore, a harsh view of the evidence which makes the executor liable for neglect.
If he had delivered the bonds over to Miss Murphy he would have been protected by 2 R. S., 89, § 89.
The case does not come within the facts of Harrington v. Keteltas et al. (92 N. Y., 40). The executor knew of the-existence of a debt and by collusion with the debtor,, waited for the statute of limitations to run against it, and there was proof that the debtor failed some four years after the defaulting executor had received letters on the estate. Here there was no probable claim against Mary Ann Murphy.
The court of appeals has decided that the legacy for masses is illegal, in that there is no declared beneficiary. Holland v. Alcock, 108 N Y. 312; 14 N. Y. State Rep., 761.
The executor paid $350 for masses for the deceased. The estate was a very small one, but there were scarcely any known debts, and the residuary legatee approved of the payment and even contributed an equal additional amount for the same purpose. The estate was entirely settled when the notice of the large claim of the petitioner was first presented. His accounts were- then before the surrogate for settlement.' Ho formal decree was entered because of the presentation 'of this claim. As to the previous payments the executor should have the protection of the statute in respect to payments to legatees made after the publication to creditors. 2 R. S., 89, § 39.
My conclusion, therefore, is that the judgment be wholly reversed. The trust was illegal it is true, but the petitioner is not in a position to question it.
Judgment reversed, with costs to the executor out of the: estate of the deceased.
Dykman and Pratt, JJ., concur.