SHULTZ, administrator, &c. *vs.* PULVER and others.

Where the intestate resided in this state at the time of his death, and administration was granted upon his estate here, by virtue of which the administrator obtained notes due to the estate of the decedent, against a debtor who resided in Pennsylvania, and had sufficient property there to pay his debts, and who was afterwards in this state, with the knowledge of the administrator, and might have been arrested here; *Held*, that the administrator was answerable for the amount of such notes, with interest.

It seems that an executor or administrator, who has taken probate of the will, or obtained administration of the estate of the decedent within the jurisdiction where he was domiciled at the time of his death, and by virtue thereof obtains possession of the securities against debtors residing in an adjoining jurisdiction, is bound to use reasonable diligence in collecting such debts, although the debtors are not within the state where the decedent was domiciled, and have no property there.

The personal estate of the deceased, wherever situated, is to be distributed according to the laws of succession which existed in the country where he was domiciled at the time of his death.

Previous to the revised statutes, the surrogate was not authorized to decree costs against an administrator, upon a proceeding to compel him to account and pay over the balance in his hands.

March 20.　THIS was an appeal from a decree of the surrogate of the county of Columbia, made in June, 1829. The appeal was from so much of the decree as charged the appellant with the principal and interest due to the intestate upon two sealed notes, executed by Albert Feltz the brother-in-law of the administrator; and also from that part of the decree which charged the administrator with the costs of taking the account before the surrogate.

*K. Miller*, for the appellant.

*A. Vanderpoel*, for the respondent.

THE CHANCELLOR. The facts in this case lie within a very narrow compass; but the principle involved is one of considerable importance to the community. At the death of the intestate, who resided in the county of Columbia, he held two

sealed notes against A. Feltz, his son-in-law, residing in the state of Pennsylvania.    One of these notes was dated the 27th of February, 1819, for the sum of $600, payable on demand, with interest.    The other was for $50, dated June 11th, 1821, and was also payable on demand, with interest.    The intestate also left other personal estate, to a very considerable amount.    The appellant administered on the estate of his father, in June, 1823, and an inventory of the estate was made the same month.    It is stated in this inventory that a note of $200, which the decedent held against the administrator at the time of his death, and also a note of $650, which the administrator swore he understood and believed was held against A. Feltz, could not be found.    The widow of the intestate died about three years afterwards; and upon examining her trunk, at that time, all these notes were found therein.    Feltz and his wife were then on a visit to the appellant and his mother, and their other relatives in the county of Columbia, and stayed there for two or three weeks after the notes were found.    At the taking of the account, in 1829, it appeared that Feltz had a good farm of about three hundred acres of land, in Pennsylvania, well stocked.

The ground assumed by the appellant is, that he was under no obligation to collect the notes of Feltz, because he resided in an adjoining state.    It is not necessary perhaps in this case to enquire what would have been the duty of the administrator, if it had appeared that he had used due diligence to obtain the amount due on the notes; and had shown that by the laws of Pennsylvania he could not have recovered against Feltz, without taking out administration there.    Even in that case I am inclined to think that this administrator, who had obtained the legal control of the notes by the laws of the country where the intestate was domiciled, would have been bound to take the necessary steps to collect the notes according to the laws of the state where the debtor resided.    I believe it is admitted by the laws of all civilized nations that the personal estate of a deceased person is to be distributed according to the laws of the country where he was domiciled at the time of his death.    Hence it is that every facility is afforded to the persons entitled to the succession, according to the *lex*

*domicilii*, to obtain the property and debts of the decedent which are within other jurisdictions. Thus, in the recent case of a debt due from the Duke of York to the Elector of Hesse, the court, upon motion, granted a limited administration to the agent of the representative of the late Elector, for the special purpose of recovering and receiving this debt. (1 *Hagg. Eccl. Rep.* 93.) And in the case of the *Countess Du Cunha*, (*Id.* 239,) the same court, in England, granted administration to a minor, to enable her to receive a particular fund in that country, upon the production of evidence that she would be entitled to receive it by the laws of Portugal notwithstanding her minority. It is probable, however, from the cases cited by the counsel, from the Pennsylvania reports, that this debt might have been collected in that state, by this appellant, even without the formality of taking out a new letter of administration there. (4 *Dall. Rep.* 292 ; 1 *Binney's Rep.* 63.) It also appears that Feltz was within the jurisdiction of this state two or three weeks after the notes were found ; and there is no legal excuse for not calling on him and compelling payment at that time.

It is suggested, it is true, that he was only here at that time for a few days to attend the funeral of his mother-in-law ; and that the administrator ought not to be compelled to bring a suit against his sister's husband, under such circumstances. I am satisfied, from the testimony, however, that no suit could have been necessary in this case, if the appellant had done his duty. The debtor was able to pay, and a considerable part of the amount due at the death of the intestate was coming back to him out of the estate, for the distributive share to which he was entitled in right of his wife. There is no pretence that these debts would not have been settled by Feltz at any time, if the administrator had only used that degree of vigilance which even a careless man would have exercised in relation to his own debt. The administrator had no right to permit this debt to remain out on personal security ; and under the circumstances, if the amount were now wholly lost by the insolvency of the debtor, he would be chargeable therewith. (*See Spode* v. *Smith*, 3 *Russ. R.* 511.) As the distributees have been kept out of their just dues by the gross neg-

ligence of the appellant; and as the notes were drawing interest in the mean time, so that he will be able to obtain the whole amount, on a settlement with Feltz, it became the duty of the surrogate to charge him with the interest.

The only mistake in the decree of the surrogate was in awarding costs against the appellant. This, however, is not upon the ground that he was not equitably liable for the costs to which he had, by his negligence, subjected the respondents; but it is because previous to the revised statutes, it was not the practice of the surrogate's courts to give costs in favor of one party against another, in testamentary matters. Costs are given by the ecclesiastical courts in England in such cases, both in original suits and on appeals. I do not find, however, that such a practice was ever adopted in this state. In the case of *Reed* v. *Vanderheyden*, (5 *Cowen's Rep.* 719,) it seems to have been taken for granted by the members of the court for the correction of errors, that the surrogate had no authority to award costs. And I also find, by examination of the records of the late court of probates, an express adjudication as to the costs on an appeal. There is in the case of *Davis* v. *Gardner*, in that court, March 27th, 1813, a decree for the payment of a sum of money into court, with costs. But I presume that part which relates to costs must have been added through inadvertence, for that is the only case to be found in that court in which costs were given. In the case of *Cornell's Estate*, October 26, 1818, the appeal was dismissed with costs; but the order was afterwards amended by striking out that part which related to costs. And the reason of which alteration is thus given on the record : "inasmuch as from investigation, this court is satisfied that costs cannot be allowed here." That part of the decree appealed from which gives costs to the respondents, must therefore be reversed, but the residue of the decree must be affirmed.

As this is a case in which, by the provisions of the revised statutes, the costs on the appeal are in the discretion of the court, I think it is proper to charge the appellant with the costs of the respondents, although he has succeeded as to a very small part of the matter in litigation on the appeal. But the respon-

dents are not to be allowed, on taxation, for any services or disbursements in relation to the appeal, which had been performed or paid previous to the first of January, 1830, when the revised statutes went into operation. The appellant must also pay to the respondents respectively the several balances due to them, as ascertained by the decree of the surrogate, together with interest thereon, from the date of the said decree, until such sums are paid; such interest being allowed by way of damages for the delay and vexation. The respondents are also to be permitted to enroll this decree of affirmance in this court, and to take out executions thereon according to the course and practice of the court.