HARRIET HOLLISTER, EXECUTRIX, ETC., APPELLANT, *v.* ABEL BURRITT, RESPONDENT.

*Executrix — failure to collect judgment — when liable personally for the amount thereof.*

On Oct. 12th, 1855, a judgment in favor of Coon was docketed against one Conover, who owned a farm worth about $4,000, which was subject to the liens of three prior judgments amounting to over $4,000, docketed in February, 1855 ; Coon died in January, 1860, when plaintiff was appointed executrix, and acted as such till December, 1871. She left the judgment in the hands of the attorney employed by the testator, who issued executions thereon, from time to time, and collected small amounts. The prior judgments, not being revived, ceased to be liens in February, 1865, and from that time to Oct. 12th, 1865, plaintiff's judgment was a first lien upon the farm.

In this proceeding brought by the plaintiff for a final accounting, *held,* that her failure to enforce the judgment during the time it was a first lien upon the farm constituted such negligence, as to render her personally liable for the amount of the judgment. LEARNED, P. J., dissenting.

APPEAL from an order made in the Surrogate's Court of Tompkins county upon the final accounting of the plaintiff.

*Jerome Rowe,* for the appellant. The executrix cannot be made liable to pay this judgment under such a state of facts. (*Thompson* v. *Brown,* 1 John., 629; *Raynor* v. *Pearsoll,* 3 John. Ch., 584; *Lansing* v. *Lansing,* 45 Barb., 192; *Pierson* v. *Thompson,* 1 Edwards Ch., 223; Tiffany & Bullard's Law of Trusts, etc., 595; *Higgins* v. *Whiton,* 20 Barb., 142.)

*F. M. Finch,* for the respondent.

OSBORN, J.:

The testator, Levi Coon, in his lifetime and on the 12th day of October, 1855, recovered a judgment against one John Conover, for the sum of about $1,129. At that time Conover owned a farm of land worth about $4,000, but which was incumbered by three prior judgments, held by the Tompkins County Bank, amounting to over $4,000, and more than the value of the farm. These bank judgments were docketed against Conover in February, 1855. This continued to be the situation of affairs till January, 1860, when Coon died, and the appellant became his

executrix, and continued to act as such till December, 1871, when she was superseded and the respondent was appointed administrator with the will annexed, in her place. Afterwards, Mrs. Hollister applied to the surrogate for a final accounting and to be discharged. The proper citations were issued, and upon the return thereof one John J. Taylor was appointed an auditor, to examine and pass upon her accounts, and to make the usual report of his doings to the surrogate. On such accounting it turned out that this Coon judgment remained unpaid, except that shall amounts thereon had been received in different years, and executions had been issued thereon, which had not been returned, although one was in the sheriff's hands when the lien of the bank judgments ceased, to wit, in February, 1865.

It will be remembered that the bank judgments were docketed and became liens on the real estate of Conover in February, 1855. After such liens expired, and from the 20th of February, 1865, till October 12th, 1865, a period of nearly eight months, the Coon judgment was the first valid lien, and might have been collected without difficulty. These facts are undisputed. The lien of the Coon judgment expired October 12th, 1865, but for nearly eight months it was not only a valid, but the first lien, as has been seen. Instead of collecting it, the appellant, who was the executrix of the Coon estate, allowed the time to pass by, and the lien to expire, till the bank judgments were revived and so became prior liens again to the lien of the judgment in question. Under such circumstances, the auditor reported to the surrogate that in his opinion Mrs. Hollister had been guilty of such negligence, as that she should be charged with the amount due on such judgment, and account therefor to the Coon estate. The surrogate adopted the report, and made his decree accordingly. Hence the appeal to this court.

It cannot be a matter for argument that the lien of the bank judgments expired as to the subsequent judgment (being the one in question) ten years after the docket thereof, and that for a period of nearly eight months the Coon judgment was a first lien on some $4,000 worth of real estate and could have been collected in full by the ordinary legal process. (2 R. S. Edm's ed. 371, § 4; *France* v. *Hamilton*, 26 How. Pr. R., 183.)

In Dayton on Surrogates, page 519, the following language is used, and which shows the care and diligence to be employed by an executor in the execution of his trust. "Such acts of negligence or careless administration as defeat the rights of the creditors or legatees, or parties entitled to distribution, amount to a *devastavit*; for if persons accept the trust of executors, they must perform it. They must use *due diligence*, and not suffer the estate to be injured by their neglect."

By the report of the auditor it will be seen that he finds from the facts, that the appellant was guilty of gross negligence. If such a conclusion is warranted or can be upheld from the facts, it is clear that the decree of the surrogate was right, and should be affirmed. All the cases to be found in the books concur in holding an executor liable for gross negligence or collusion. (*Ruggles* v. *Sherman*, 14 John., 446; *McRae* v. *McRae*, 3 Bradf., 199; *Shultz* v. *Pulver*, 3 Paige, 182.)

Certainly an executor or administrator cannot complain if he is held to that amount of care and diligence in the management of the estate committed to him, as a reasonably prudent person would employ in the management of his own affairs. (Redfield's Law and Practice, page 250.) In the case before us, no one would question the liability of the appellant, if when she first accepted the trust she had found this judgment good, valid and collectable, for eight months, and the same was subsequently lost by reason of her neglect to enforce its payment. (Williams on Ex'rs, 15, 43; McClellan's Probate Practice, 213; *Schultz* v. *Pulver et al.*, 11 Wend., 361.)

This judgment was for a large amount and formed an important part of the estate which the appellant undertook to administer, and the question is whether such diligence has been used in efforts to collect it as ordinary prudence would suggest. She is presumed to know the law, though she says she did not in fact know that the lien of the bank judgments had ceased after ten years from the time of their docket, nor is there any pretense that she has acted in bad faith or collusively. It does seem hard, at first thought unjust, to charge her personally with the full amount of this judgment when she has received nothing therefrom. But I am forced to the conclusion after a most careful examination of

the case as presented on this appeal, and the authorities to which we have been referred, and others, that there is enough to show such negligence or want of reasonable diligence as to warrant the decree of the surrogate, based upon the report of the auditor.

The decree appealed from must be affirmed with costs.

BOCKES, P. J., concurred.

LEARNED, P. J., dissenting:

The only question is, whether the executrix was guilty of such gross negligence in respect to the Conover judgment, that she should be held personally liable for its amount. When the testator died, and the executrix was appointed, the judgment against Conover was of no value. It was a lien on a farm worth about $4,000; but there were prior judgments to an amount of more than the value of the farm. The testator died in January, 1860. Five years after that time the prior judgments ceased to be a lien by the lapse of the ten years; and for about eight months thereafter, the judgment belonging to the estate of the testator was the first valid lien.

After the appointment of the executrix, the judgment remained in the care and management of the same attorney who had been the attorney of the testator in recovering the judgment; and it continued to be in his care, and in the care of attorneys in good standing, until the executrix was removed. Executions had been issued thereon before the testator's death, and one was issued after his death, and about 1861. These attorneys, from time to time, collected small sums of money which were paid to the executrix.

The executrix acted in good faith, and had no knowledge that the lien expired in ten years. I cannot think that she was guilty of gross negligence.

First. She entrusted the business of collecting the judgment to an attorney in good standing; the same attorney whom the testator had employed. This was certainly what she should have done. It was the proper means for her to take to collect the debt. Indeed, I might say, it was the only means. If she had attempted to collect the debt by issuing an execution herself, she would have

been guilty of negligence, in case she had made any error in the process. Now, if the attorney neglected his duty in the matter, the executrix was not culpable, and would not become culpable until she should have knowledge of his neglect. Thus, if the administrator of a deceased partner, *bona fide*, permits the sur-viving partner to sell the stock in the due course of trade, he is not to be held responsible for loss to the estate: (*Thompson* v. *Brown*, 4 Johns. Ch., 620.)

Second. If she was not negligent in entrusting the business to an attorney in good standing in the first place, there is nothing that I see to show subsequent negligence. It cannot be that an executor is chargeable with gross negligence for being ignorant. that the lien of a judgment ceases in ten years. It may be the duty of the executor to take legal advice, and it may be negligent to fail to do this. But to hold an executor negligent for ignorance of the law, is to say that he shall be wiser than the highest court in the state.

Third. When the executrix came into possession of this claim it was valueless. It so continued for five years. At any time during that five years the prior judgment creditor might have sold the land and cut off this judgment altogether. Probably by some blunder the prior judgment creditor allowed his lien to expire. But the executrix had no reason to expect that he would do this. It was a thing improbable in itself. A very shrewd business man might have been on the look out for this possible neglect on the part of the prior creditor. It was not however gross negligence to suppose that the prior creditor would not let his lien run out. She could not be expected to foresee all possible future events. Where an investment is made by the intestate, the fact of a fall in the market is not enough to charge the administrators. It must be shown that they have acted unreasonably. (*McRea* v. *McRea*, 3 Bradf., 199.)

Finally; if the judgment, at the time when the executrix was appointed had been a first lien, and she had employed a competent attorney to collect it, she could not have been responsible for his neglect, not known to her. Still less can she be liable, when she has employed such an attorney, and only by some accident not to be expected, does the judgment at the end of five years, become a first lien and capable of being collected.

"This court has always treated trustees acting in good faith with great tenderness." (*Thompson* v. *Brown, ut supra.*)

I think the decree should be modified in the respect appealed from with costs.

Present—LEARNED, P. J., BOCKES and OSBORN, JJ.

Decree of the surrogate affirmed with costs.