---

### *In re* MILLARD'S ESTATE.

(*Surrogate's Court, Monroe County.* November 8, 1889.)

1. EXECUTORS—FAILURE TO COLLECT ASSETS.
    Where an executor receives as assets the note of a person in another state, owning a farm worth $3,000, mortgaged for $1,200 only, and, instead of trying to collect it by reducing it to judgment or otherwise, he waits until other liens are acquired against the land, and it is sold, he should be charged with the amount of the note.

2. WILLS—CONSTRUCTION—NATURE OF ESTATE—LIABILITY OF EXECUTOR.
    Testator gave his household furniture to his wife absolutely, and in another clause of his will devised to her "all the residue and remainder of my real and personal estate, to be used for her own personal benefit during her natural life." The executor was authorized to sell any of the estate, with the advice and consent of the widow, "the use of the money" so arising to be given to her, and certain specific legacies were given to be paid at her death. *Held,* that the widow was only entitled to the use or income of the residuary estate during her life, and the executor should be charged with any of the principal turned over to her by him, and so lost to the estate.

On exceptions to report of referee, on settlement of the account of Henry Millard, as executor of the will of Sylvanus S. Millard, deceased.

*J. H. Chadsey*, for executor.    *Horace McGuire*, for contestant.

ADLINGTON, S.   The will of the above-named decedent, after directing the payment of debts, bequeaths absolutely to the testator's wife all of his household furniture.   It then gives to his son, Henry, the executor, a bequest of $1,000, and proceeds as follows, viz.: "*Fourth.* I will and bequeath to my beloved wife, Margery Millard, all the residue and remainder of my real and personal estate, to be used for her own personal benefit during her natural life.   I hereby authorize my executor, hereinafter named, with the advice and consent of my wife, Margery, to sell in part or all of my real and personal estate; and the use of the money arising therefrom shall be, as above stated, given to my wife, Margery, for her benefit and support during her natural life; and, after her decease, I will my daughters, Barbery S. Rich, Jennett Ann Clark, Freelove A. Everett, and Alexander S. Millard, each one, five hundred dollars.   The remainder of my estate to be equally divided among all of my heirs." The will is dated December 15, 1873, and the testator died June 27, 1876. The account of the executor states that the testator's estate consisted of a house and lot worth $1,200, a small farm worth $1,500, and a mortgage and certain promissory notes having apparent value of about $2,700.   Of these notes several were reported worthless, among the number one being made by Barzilla Millard, a son of the testator.   There was realized from the assets somewhat more than $1,400, out of which were paid the debts of the testator, amounting to about $465, and the remainder was turned over to the widow by the executor.   In 1881 the farm was sold for $1,500, of which the executor retained $700 to apply on his own legacy above mentioned, and paid over the remaining $800 to the widow.   The latter died in August, 1885, leaving no property.   Objections were filed to the account, the matter was referred, and the questions now to be considered come up on exceptions to the referee's report.   The referee found, in effect, that the indebtedness of Barzilla Millard to the estate heretofore mentioned was not collectible, and that the account of the executor should not be surcharged with the amount thereof.   This, I think, was error.   It appears from the evidence that Barzilla had given to his father, in 1874, his promissory note for $387.32, payable on demand, and that this note came into the executor's hands in the fall of 1876 as a part of the testator's assets.   Barzilla at that time owned a farm in Maryland worth from $3,000 to $4,000, which was incumbered to an amount not exceeding $1,200.   The executor visited Barzilla in Maryland soon after he had received letters testamentary, and had come into possession of the note aforesaid.   A judgment on the note could then have been easily obtained, either by confession or action, and such judgment would have insured the ultimate collection of the debt by making it a lien on the farm.   A mortgage would have made the claim equally secure, and could probably have been obtained.   The executor, however, did nothing.   Barzilla contracted other debts.   Judgments were taken against him, and at last, in 1879, the farm was sold on execution, was bought in by the executor individually, and was afterwards mortgaged by him for $1,850, and a large part of the money so obtained was used in paying off claims against Barzilla.   On the same day that the executor became the purchaser of Barzilla's farm, he surrendered the note of 1875, and took the one which he now holds for $519 in renewal of the former.   The new note is signed by Barzilla alone, and is worthless.   This debt seems to have been lost through the negligence of the executor, and he should be charged with the value thereof.   An executor is bound to try to collect a debt due from a solvent person in another state, and when such debt is lost by his neglect he is liable.   *Shultz* v. *Pulver*, 3 Paige, 182, affirmed 11 Wend. 361.   See, also, *Harrington* v. *Keteltas*, 92 N. Y. 40; *Hollister* v. *Burritt*, 14 Hun, 291–293; *Holcomb* v. *Executors of Holcomb*, 11 N. J. Eq. 281–300; *Powell* v. *Evans*, 5 Ves. 839–844.

A second question arises in regard to the turning over to the widow, by the executor, of the entire personal estate after payment of debts; and also in regard to the payment to her of the sum realized from the sale of the farm, less the $700 applied on the executor's own legacy. The decision of this point depends wholly on the construction of the fourth clause of the decedent's will, above quoted. The executor maintains that, by virtue of that clause, the widow took an absolute title to the testator's property, and had a right to its possession and to use the whole for her benefit and support. This is the view taken by the referee. The contestant, on the contrary, insists that the widow was entitled only to the use or income of the residuary estate during life, and that it was the duty of the executor to preserve the principal for distribution to the legatees after the widow's death. I think that the latter is the correct construction of the instrument. The testator, in the first clause of the will, had given his wife all his household furniture absolutely. In the fourth clause he evidently intended to make a different disposition of the residue, and to give her the use only of that portion of his estate remaining after payment of debts and of the executor's legacies. That he did not intend to give her power to exhaust the principal seems plain, from the fact that nearly the whole of such principal would be required to satisfy the legacies directed to be paid therefrom after the widow's death. It is also to be observed that the power to sell either the personal or real property was lodged, not in the widow, but in the executor. No part of the personal property should have been turned over to the widow, except the household furniture. By the third clause of the will an absolute legacy of $1,000 was given to the executor, Henry Millard. That legacy was payable in one year after the issue of letters testamentary out of the personal estate. The satisfaction of this legacy, the payment of testator's debts, and the funeral expenses, and of the executor's commissions and expenses, would have just about exhausted the collectible personal assets; and, if the executor had followed the plain rules of the law in the premises, no question could have arisen in regard to the ownership or disposition of such personal assets. So long as the land remained unsold, the only "use" the widow could make of it would be to occupy and work it, or to lease it; and it seems very clear that when a part was sold she took under the will only the interest or income of the money realized therefrom. When, therefore, the executor turned over to her a part of the principal derived from such sale, and paid part to himself as legatee, he did that which he was not authorized by law to do, and he must now account for the fund. *Calkins* v. *Calkins*, 1 Redf. Sur. 337; *Tyson* v. *Blake*, 22 N. Y. 558; *Terry* v. *Wiggins*, 47 N. Y. 512, 515; *Livingston* v. *Murray*, 68 N. Y. 485; *In re Cager*, 46 Hun, 657.

This case is clearly distinguishable from those in which the testator gives to beneficiary during life the use of property for his support or benefit, and then directs that the "residue," or "the remainder," or what "remains," or "what is left," shall be divided among certain specified persons. Examples of this kind are *Cohen* v. *Cohen*, 4 Redf. Sur. 48; *Spencer* v. *Strait*, 38 Hun, 228; *Thomas* v. *Wolford*, 1 N. Y. Supp. 610; *Leggett* v. *Firth*, 6 N. Y. Supp. 158. In all these cases it was clearly the intention that the principal fund could or would be encroached on or expended, and that it was only the unexpended remainder which was to be divided after the death of the first beneficiary; while in the present case the testator has given legacies, payable after the widow's death, which, as before said, would require for their payment nearly the whole residuary estate. For these reasons the report of the referee must be set aside, and the orders of reference vacated.