Scott M. Loftin, Receiver of Florida East Coast Railway Company, Respondent, *v.* William R. Kenan, Jr., and Another, Trustees under the Will of Mary Lily (Flagler) Bingham, Deceased, and Others, Appellants, and Louise Clisby Wise Francis and Others, Defendants.*

First Department, April 9, 1937.

* Revg. 155 Misc. 552.

*Elihu Root, Jr.,* of counsel [*Emory R. Buckner, John M. Harlan* and *Vincent R. Smalley* with him on the brief; *Root, Clark, Buckner & Ballantine,* attorneys], for the appellants.

*John W. Davis* of counsel [*Allen Wardwell, Ralph M. Carson* and *Edward C. McLean* with him on the brief; *Davis, Polk, Wardwell, Gardiner & Reed,* attorneys], for the respondent.

TOWNLEY, J. This action was brought by one of the receivers of the Florida East Coast Railway Company. The relief demanded was (1) a construction of the will of Mary Lily (Flagler) Bingham; (2) a declaration that the railway company was the beneficiary of a trust created by item ninth of her will, and (3) an order that the trustees be directed to " apply the funds of said trust  *  *  * to meet the needs of the Railway Company."

Mrs. Bingham died July 27, 1917. By her will she provided that her residuary estate should be held by trustees for twenty-one years from the date of the will for the "maintenance and administration and development" of the properties constituting the Florida enterprises of her deceased husband. At the end of the twenty-one-year period the entire residuary estate was to go to her brother and two sisters. The clause in her will, construction of which is sought in this action, reads as follows: " All the rest and residue of my estate including all lapsed bequests or devises, shall be held for the *term of twenty-one years* from the date of this will by my said Trustees in trust *for the maintenance and administration and development of the Florida East Coast Railway and the Florida East Coast Hotel properties* (which are hereinafter called ' Principal properties ') and the properties held by subsidiary Companies. And to that end, *my said Trustees shall have power to sell any of my said residue estate, except the stocks and bonds of said ' principal properties,'* to invest the proceeds of such sales and the income and increments of all my said residue estate in such securities or other properties as they may think best; *to use any of the said proceeds or said income or increments for the benefit of any of said principal or subsidiary properties;* to make and execute any and all obligations, and all pledges and mortgages of any of my said residue estate except the stocks and bonds of the said principal properties, which may be necessary for the purposes of the maintenance, administration or development of the said principal or subsidiary properties; to exchange any of said properties, other than the principal properties and the stocks and bonds thereof, for any property which to them may seem desirable to be acquired for the benefit

of the said principal or subsidiary properties, and continuingly to invest, sell and reinvest at such times and in such manner and in such sums and in such properties as may seem to them desirable for the purpose of carrying out the maintenance, administration and development of the said properties *the primary purpose of this trust being the keeping together of the enterprise* into which my beloved husband, Henry M. Flagler, put so much of his energy, ambition and life." (Italics ours.)

Mrs. Bingham was the widow of Henry M. Flagler, who for many years prior to his death had been a pioneer in the development of the east coast of Florida and had invested a substantial part of his large fortune in the organization and development of railroads, hotels, steamship companies and other incidental activities. At the time of his death these investments were represented in the main by two major companies, Florida East Coast Railway Company and Florida East Coast Hotel Company. By his will he left the residuary estate, which included the investment in these Florida enterprises, to his wife. After certain specific legacies, he created a trust in the balance of his estate for five years " to be used, managed and controlled * * * for the purpose of protecting, fostering, operating and developing during the life of such trust, all my Florida properties according to the purposes indicated by the charters of the several companies." The continuation of the policy indicated by this provision in her husband's will was undoubtedly the reason for the creation of the trust found in item ninth of Mrs. Bingham's will.

At the time of her death and at the time that her will was drawn the railway company was in a prosperous condition, and that condition continued for some time. The subsequent Florida land boom and the increasing popularity of Florida as a winter resort had brought so much business to the railway company that some enlargement of its trackage and equipment became necessary. To finance these improvements bonds were issued in 1924 in the sum of $45,000,000, secured by a general mortgage of the railway company's property. This mortgage was a first lien subordinate only to a prior mortgage of $12,000,000. Shortly thereafter equipment trust certificates were issued aggregating $9,825,000. These bonds and equipment certificates were marketed in the usual way through J. P. Morgan & Company. They were not guaranteed by the estate and were not sold or purchased in reliance upon the provisions of Mrs. Bingham's will. Shortly after these improvements had been made, the company began to suffer heavy losses. Some of the contributing causes were the collapse of the Florida land boom in 1926, the financial crisis in 1929 and the completion of

parallel and competing lines which deprived the company of the monopoly it had previously enjoyed. The company had an aggregate deficit of $15,690,000 from 1927 through 1933, and in 1932 and 1933 it failed to earn its operating expenses. The deficit for each year (1932 and 1933) was over $3,000,000. The present receivership followed.

By this action the receiver has sought to bring to the aid of this distressed enterprise the principal of the trust created by item ninth of this will. It is claimed in effect that this company is a beneficiary of this trust and entitled to compel the trustees to apply to the reorganization of this company the property held by them. The obligations of the railway company presently due consist of the principal of the $45,000,000 first and refunding mortgage bond issue and defaulted interest thereon, amounting to $12,375,000, approximately $4,350,000 principal amount of equipment trust certificates and $627,075 receivers' certificates. The trustees have declined to recognize the railway company as the *cestui que trust* of this trust or as the ultimate beneficiary of its provisions. They have determined that the principal of the trust should not be put to the hazard of loss in attempting to aid in any attempted reorganization of this company. The court below has held that the Florida East Coast Railway Company is a beneficiary under Mrs. Bingham's will and has appointed a referee to take proof and determine the extent of such aid and conditions under which it should be given.

The primary purpose of this action is to secure payments of the obligations of this insolvent company. The creditors of this company are, of course, strangers to Mrs. Bingham and cannot be deemed the ultimate objects of her bounty. Her intentions in making the provisions which are found in her will were not charitable nor did she intend that her fortune should be consumed in contributions to these properties for sentimental reasons. The purpose sought to be served by the trust was the ultimate good of her estate and the protection of the large investment which she had in the properties. Confirmation of this intention may be found in the nature of Mr. Flagler's transactions with these companies. In his will he described his holdings as "investing in railroads, hotel and land companies in the State of Florida." His dealings with this company were at all times conducted on a strictly business basis. Whenever money was furnished, some security or obligation was taken in exchange. His advances were all made under conditions indicating the expectation of return with profit. He frequently took securities at a discount. The whole history of Mr. Flagler's and Mrs. Bingham's relations with these com-

panies negatives any conclusion that they considered them as the objects of their bounty or that Mrs. Bingham intended them instead of her residuary estate as the beneficiaries of this trust.

Mrs. Bingham at the time of her death was a resident of Kentucky and her will so far as it disposes of personal property is to be construed according to the law of that State. (Dec. Est. Law, § 47; *New York Life Ins. & Trust Co.* v. *Viele,* 161 N. Y. 11.) The law of Kentucky was established by the decision of the Court of Appeals of Kentucky construing the trust provisions contained in Mr. Flagler's will. (*Bingham's Admr.* v. *Commonwealth,* 196 Ky. 318; 244 S. W. 781 [1922].) The court was there called on to determine whether the beneficial interest in the trust was vested in Mrs. Bingham and subject to tax or in the companies which were claimed to be the beneficiaries. The court held that Mrs. Bingham possessed the properties to the exclusion of " everybody else on earth." Referring to the argument that the companies were the beneficiaries, the court in its opinion said: " It will be noticed that this argument is based largely upon the assumption that the trustees held the Flagler trust property for the benefit of those properties, and not for the present and future benefit of Mrs. Bingham, and in this counsel is plainly mistaken, as the provisions of the Flagler will indubitably prove. It was plainly Flagler's expectation that the need of financial assistance by these properties to render them extremely valuable for his sole beneficiary was but temporary; and obviously his object in providing for the trust was to relieve his beneficiary of the worry and trouble that might be required of her to carry these properties through the development stage. He was intensely interested in these properties, it is true, and spent money freely but wisely in developing them, and if he had been as much concerned about their continued operation, regardless of whether that could be done profitably, as counsel for defendants assume, he would have provided for their maintenance, not merely for the short time considered necessary for their proper development but for a very much longer period, if not for all time. He knew better than anybody else the ability of these properties ultimately to produce profits for the object of his concern, if they were but given proper financial support for a short time, and this he provided for, as he himself said, in order that his beneficiary might escape even the trouble and annoyance incident thereto. To say that Mrs. Bingham was not ' possessed ' of this property requires extreme technicality, and disregards entirely the fair meaning of the term, ' according to the common and approved usage ' thereof."

By like reasoning it follows that the beneficial interest in this trust is vested in the remaindermen and not in the various corporations which represent Mr. Flagler's Florida enterprises.

A similar situation was considered by this court in construing the provisions of the will of Mr. Pulitzer, the founder of *The World* (*Matter of Pulitzer*, 139 Misc. 575; affd., 237 App. Div. 808). The testator there had created a trust in the stock of the Press Publishing Company which published *The World*. The will forbade any sale of this stock and enjoined upon the trustees the duties of " preserving, perfecting and perpetuating ' The World ' newspaper (to the maintenance and upbuilding of which I have sacrificed my health and strength) in the same spirit in which I have striven to create and conduct it as a public institution, from motives higher than mere gain." The language was construed as being in the nature of a direction as to the retention of an investment. The court there said that the testator " could not have intended that from mere vanity, the publication of the newspapers, with which his name and efforts had been associated, should be persisted in until the entire trust asset was destroyed or wrecked by bankruptcy or dissolution." Here too, it may be said that Mrs. Bingham never intended that mere sentimental interest in the Florida enterprises should be persisted in until her entire residuary estate was dissipated and her ultimate intention as to her brother and two sisters frustrated. The proof here is insufficient to establish that Mrs. Bingham intended the Florida enterprises to be beneficiaries under her will. Under item fifth of the will, Mrs. Bingham left to her brother and sisters, other relatives and various friends and charities, legacies aggregating $16,625,000. Under item eighth, she left an annuity to the University of North Carolina. If item ninth is construed as making the railway company a beneficiary, then the fulfillment of items fifth and eighth are subject to partial impairment or complete failure through the demands of the Florida enterprises. Item ninth of this will should be construed, as similar directions in the Pulitzer will, as a direction to retain and develop an investment and not as creating any beneficial interest in the Florida East Coast Railway Company or the other companies in the aggregate representing the Florida enterprises.

There was no justification for that part of the judgment appealed from, which directed a hearing before a referee to determine the extent of aid and conditions under which it should be given to this company. The determination of this question was left by the testatrix to the sound discretion of her trustees. The court below has found that they have not abused their discretion and have

not been guilty of dishonesty or bad faith. Certainly no other conclusion is possible. That they were unwilling to risk the principal in their hands in a vain attempt to rehabilitate a hopelessly insolvent company calls for commendation. The use of the entire principal of the trust amounting to approximately $17,000,000 in such a venture could at best only postpone the ultimate disaster and destroy the rights of the residuary legatees.

The judgment appealed from should be reversed, with costs, and the complaint dismissed, with costs.

MARTIN, P. J., GLENNON, UNTERMYER and COHN, JJ., concur.

Judgment unanimously reversed, with costs, and the complaint dismissed, with costs. The findings inconsistent with this determination should be reversed and such new findings made of facts proved upon the trial as are necessary to sustain the judgment hereby awarded. Settle order on notice.