MILTON H. RUBIN, Respondent, *v.* IRVING TRUST COMPANY, as Executor of HAROLD RUBIN, Deceased, et al., Appellants.

First Department, June 3, 1952.

*James N. Vaughan* of counsel (*Vaughan and Lyons,* attorneys), for Irving Trust Company, as executor under the last will and testament of Harold Rubin, deceased, and Leslie & Company, appellants.

*Robert Szold* of counsel (*Milton Altman* with him on the brief; *Szold & Brandwen,* attorneys), for Rita R. Lowe, Arthur L. H. Rubin and Harold F. Linder, as guardian ad litem of Prudence W. Linder and Susan E. Linder, infants, appellants.

*Henry I. Fillman, pro se* as guardian ad litem of Caryl Fillman and Jeffrey Fillman.

*Simon H. Rifkind* of counsel (*Martin Kleinbard* and *Edward N. Costikyan* with him on the brief; *Paul, Weiss, Rifkind, Wharton & Garrison,* attorneys), for respondent.

VAN VOORHIS, J. These appeals are from orders denying motions by different defendants for summary judgment dismissing the complaint, which demands specific performance of an oral contract by a decedent to refrain from changing a will. Plaintiff alleges that he purchased shares of stock in a closely held corporation from his brother and sisters, in consideration of a promise by another brother, Harold Rubin, the decedent, not to alter his 1938 will which would have given his stock to plaintiff. Decedent's holdings amounted to about 15% of the issued and outstanding shares, and are said to have been worth $258,750 or upwards at the time of his death.

Subdivision 7 of section 31 of the Personal Property Law requires a contract to be in writing and subscribed by the party to be charged therewith, or by his lawful agent, if it is '' to bequeath property or make a testamentary provision of any kind ''. This subdivision was added by chapter 616 of the Laws of 1933. Testamentary gifts had long been required to be in writing, except for nuncupative wills (Decedent Estate Law, §§ 16, 21). Until 1933 no corresponding statutory provision had forbidden oral contracts to make wills. The view of the Court of Appeals concerning this omission had been stated in no uncertain terms (*Hamlin* v. *Stevens,* 177 N. Y. 39; *Rosseau* v. *Rouss,* 180 N. Y. 116; *Roberge* v. *Bonner,* 185 N. Y. 265; *Holt* v. *Tuite,* 188 N. Y. 17). In *Hamlin* v. *Stevens* (*supra,* pp. 47–48) that court said per VANN, J.: '' Contracts of the character in question have become so frequent in recent years as to cause alarm, and the courts have grown conservative as to the nature of the evidence required to establish them, and in enforcing them, when established, by specific performance. Such contracts are easily fabricated and hard to disprove, because the sole contracting party on one side is always dead when the question arises. They are the natural resort of unscrupulous persons who wish to despoil the estates of decedents.''

Many similar comments could be quoted. Although such contracts were not voided, even if not in writing, nevertheless equity became very slow to intervene to direct the devolution of estates in actions for specific performance of promises evidenced only by the spoken word. In the cases above cited, and in many others, courts have been careful to point out that their condemnation of oral contracts of this nature was not intended to reflect upon the character of particular claimants, but that the rule that either a written contract or disinterested testimony must be produced was adopted as a matter of general public policy. As was said per HISCOCK, J., in *Holt* v. *Tuite* (188 N. Y. 17, 22): '' The court has felt compelled to do this by the frequency with which such claims were arising and in view of the dangerous opportunities afforded through them of fraudulently sweeping the property of a dead person away from those to whom it would naturally pass. These rules must be general in their application and may not be too much shifted in any particular case to meet the necessities and equities, real or fancied, of that particular case.''

The enactment of subdivision 7 of section 31 of the Personal Property Law was designed to fulfill, and extend, the public

policy which the courts had previously established in the case of New York State testators. Surrogate Foley, who was the chairman of the Decedent Estate Commission which recommended the measures which passed into this legislation, said (New York State Bar Assn. Bulletin, Vol. V, June, 1933, p. 284): "They correct a serious omission in the law by requiring such agreements to be in writing. It seems almost incomprehensible that the law threw around the execution of the will certain strict requirements, including the testamentary instrument to be in writing, that it be subscribed at the end by the testator and that it be duly attested by at least two subscribing witnesses, and yet under the former practice it was possible for a person to assert and even establish an agreement to leave the entire estate to the promisee without a scrap of paper to evidence the agreement or obligation. Claims of this kind have been subject to severe criticism and stricture in the decisions of the Court of Appeals. These new amendments will not only prevent the bringing of an action unless the agreement is in writing, but will also abolish the present system which has led to unfounded assertions of such claims against estates in the hope of realizing a settlement, because of the delay in distribution to the real beneficiaries named in the formally executed will."

The policy of this law cannot be satisfied by upholding such agreements on oral testimony that they have been entered into in other States having no equivalent statute. To do so, would subject New York State domiciliaries to the same hazards adverted to by the Court of Appeals and guarded against by the Legislature.

In arriving at this conclusion, it is not essential to hold that all of the subdivisions of section 31 of the Personal Property Law, or other sections enacting the Statute of Frauds, must necessarily be construed in the same manner. Neither is it essential to decide whether subdivision 7 of section 31 is substantive or procedural in character. It proclaims a public policy, in either event, with reference to contracts of residents of this State to bequeath property or to make other testamentary provisions. Neither is there any controlling distinction, insofar as this case is concerned, between a contract to make a testamentary disposition, and an agreement not to revoke or alter a testamentary disposition contained in an existing will. Wills are ambulatory during the lifetime of the testator.

If, in this instance, the Statute of Frauds be considered to be substantive law, as Special Term has held, it does not follow

that the law of Florida governs, even if the alleged oral contract was made in that State. We have concluded, for reasons hereafter mentioned, that the record establishes that decedent was domiciled in New York State. That signifies that any oral contract to bequeath his stock to plaintiff was broken in New York, at the time of his death, by his leaving a different last will and testament from the one which he is alleged to have promised to plaintiff that he would continue in effect. A will speaks from the time of death (*Beetson* v. *Stoops,* 186 N. Y. 456, 460; *Youngs* v. *Youngs,* 45 N. Y. 254, 257), and from the place of domicile of the testator, at least in the absence of the expression of a contrary intention. In *Parsons* v. *Lyman* (20 N. Y. 103, 112), the Court of Appeals said (per DENIO, J.): '' It is an established doctrine, not only of international law but of the municipal law of this country, that personal property has no locality. It is subject to the law which governs the person of the owner, as well in respect to the disposition of it by act *inter vivos,* as to its transmission by last will and testament, and by succession upon the owner dying intestate. (*Story's Conf. of Laws,* §§ 376–383, *and cases in the note to* § 380; 2 *Kent Com.,* 428, 429; *Holmes* v. *Remsen,* 4 *John Ch.* 460; 4 *Cow.,* 517, *note; Shultz* v. *Pulver,* 3 *Paige,* 182; *S. C.,* 11 *Wend.,* 363; *Vroom* v. *Van Horne,* 10 *Paige,* 549.)'' Although this doctrine is subject to some qualifications (cf. *Hutchison* v. *Ross,* 262 N. Y. 381), the principle that the law of the domicile regulates the testamentary disposition of personal property is not '' a throwback to the theory that an individual carried his personal law with him wherever he might be '', as stated in respondent's brief, nor a. '' personal theory of law '' which '' long ago outlived whatever usefulness it may have had in other times and under other forms of social organization.'' On the contrary, the power to dispose of property by will is conferred by the State upon its residents under section 10 of the Decedent Estate Law. In the case of residents of other States, section 47 provides that testamentary dispositions of personal property situated within this State, '' are regulated by the laws of the state or country, of which the decedent was a resident, at the time of his death.'' In *New York Life Ins. & Trust Co.* v. *Viele* (161 N. Y. 11, 19) the Court of Appeals said: '' The referee who tried the case found as a fact that the testatrix never changed, or intended to change, her domicile of origin, but that when she made the will, and up to the time of her death, her legal domicile was in the city of New York. This finding, unanimously affirmed in the court below, concludes

us with respect to the domicile of the testatrix, and it is so well settled that the law of the domicile must prevail in the interpretation of wills that any discussion of that principle is unnecessary. (*Dupuy* v. *Wurtz,* 53 N. Y. 556; *Moorhouse* v. *Lord,* 10 H. L. Cas. 283.)'' That case and principle were expressly followed by this court in *Loftin* v. *Kenan* (250 App. Div. 546, 550, affd. 276 N. Y. 615). Here there is no question of the testator's having placed a special meaning upon language indicating that it is to be construed otherwise than under the law of the domicile.

It has been held that courts of this State will not aid in carrying out here bequests contrary to the statutes of another State where testator was domiciled (*Despard* v. *Churchill,* 53 N. Y. 192).

While it is true that the present case involves an alleged breach of contract affecting a testamentary disposition, rather than the construction of a will, the policy affecting the one is so closely interwoven with that controlling the other, that it is not regarded as a vital distinction for the purposes of this appeal.

If the former will had not been superseded, it would have been governed by the law of New York State, where it would have been probated. The later will, which violated the alleged oral agreement, was probated here and is regulated by New York law. In other words, notwithstanding that decedent died while sojourning in Florida, the oral agreement, if it existed, would have been performed in New York by the probate of the earlier will, and was broken in New York by the probate of the will of 1947. It is unnecessary to decide what would have been the case if decedent had been domiciled elsewhere.

Much learning in the field of conflict of laws has been expended upon which law governs, the law of the place where a contract is made or that of the place where it is to be performed. No useful purpose would be served by attempting here to collect the authorities (cf. opinion by Shientag, J., at the Appellate Term in *Jones* v. *Metropolitan Life Ins. Co.,* 158 Misc. 466). In *Wilson* v. *Lewiston Mill Co.* (150 N. Y. 314) it was held that the question of the locus of a contract and, consequently, of the State by the laws of which the contract is to be governed, must be determined with reference to the facts and circumstances surrounding the place in each case presented. It was stated that the law of the place of making and the law of the place of performance of the contract are to be taken into consideration, neither of itself being conclusive but that the two

must be considered in connection with the whole contract and the circumstances under which the parties acted. This has been sometimes referred to as the "center of gravity" doctrine (*Jansson* v. *Swedish American Line,* 185 F. 2d 212, 218, 219). The significant aspects of the present case appear to center in New York, where the will has been probated and by whose law it is governed.

These principles were weighed and explicitly decided by the Supreme Judicial Court of Massachusetts in *Emery* v. *Burbank* (163 Mass. 326) in an opinion per HOLMES, J. The only difference in the facts between that case and this is that here the testator was always domiciled in New York State, whereas in *Emery* v. *Burbank* (*supra*) the decedent had been domiciled in Maine when the contract and will were made; she afterwards removed to Massachusetts and died there. The law of Massachusetts was held to govern. The courts of Iowa have had occasion to consider the problem and have disposed of it in the same manner as in Massachusetts (*Caruth* v. *Caruth,* 128 Iowa 121). The case of *Loucks* v. *Standard Oil Co.* (224 N. Y. 99) is not analogous.

Although this decedent retired from business in 1939 and after that was largely absent from New York State, the record is clear that he travelled and sojourned elsewhere on account of his health without acquiring a new domicile, which is necessary in order to effect a change (*Matter of Ratkowski* v. *Browne,* 267 App. Div. 643). His income tax returns were filed as a New York State resident during the intervening years; he designated his residence as 22 East 93rd Street, borough of Manhattan, city, county and State of New York, under oath in the papers submitted by him as executor and trustee of his father's estate, after .he is claimed to have left this State; plaintiff alleges in the complaint in this action that he died a resident of the county and State of New York; and the will was probated in New York County, not upon the ground that he had property here, but that he was, at the time of his death, a resident. The Surrogate's Court exercised jurisdiction upon that basis under subdivision 1 of section 45 of the Surrogate's Court Act. The determination by the Surrogate, after respondent had been duly. cited, that decedent was a resident of New York State and County at the time of death, can no longer be questioned (*Bolton* v. *Schriever,* 135 N. Y. 65, 72, cited with approval in *Flatauer* v. *Loser,* 211 N. Y. 15, 19 and *Matter of Schell,* 272 App. Div. 210, 214).

The orders appealed from should be reversed, with one bill of $20 costs and disbursements to the appellants and the motions for summary judgment should be granted and judgment directed to be entered in favor of the defendants dismissing the complaint herein.

COHN, J. (dissenting). The action is for specific performance of an oral agreement made by respondent and his brother, Harold Rubin, deceased, whereby the deceased promised not to change his will without respondent's consent. The agreement was made in the State of Florida, and it is claimed that it was thereafter acted upon by respondent during the lifetime of the deceased.

In denying the motions for summary judgment it would appear that the Special Term correctly held that the validity of the agreement is governed by the law of the place where made, that is the State of Florida (*United States Mtge. & Trust Co.* v. *Ruggles,* 258 N. Y. 32, 38) where concededly it is enforcible (*Exchange Nat. Bank of Tampa* v. *Bryan,* 122 Fla. 479; *Miller* v. *Carr,* 137 Fla. 114; *Farrington* v. *Richardson,* 153 Fla. 907) and that the Statute of Frauds of this State does not declare an overriding public policy which precludes enforcement of this agreement. Moreover, issues of fact exist as to what the domicile of the deceased was when he made and breached the contract in suit and what it was at the time of his death; and as to whether respondent in offering to purchase decedent's stock from the executor and accepting benefits under the will, was thus estopped from asserting any right inconsistent therewith.

In any event, under the circumstances of this case all questions arising including the one as to whether the law of the place of the making of the contract or the law of the place of its performance is to apply to the interpretation and validity thereof should be determined only after a full trial at which all relevant facts may be adduced.

The orders should be affirmed.

PECK, P. J., and CALLAHAN, J., concur with VAN VOORHIS, J.; COHN, J., dissents and votes to affirm in opinion in which HEFFERNAN, J., concurs.

Orders reversed, with one bill of $20 costs and disbursements to the appellants and the motions for summary judgment granted, and judgment is directed to be entered herein in favor of the defendants dismissing the complaint herein, with costs. Settle order on notice. [See *post,* p. 864.]