In the Matter of the Estate of HARRIET A. FERRIS, Deceased. JOSEPH W. FERRIS et al., Appellants; ANDREW G. AKIN, Respondent.

Third Department, November 16, 1955.

*Wendell P. Brown, Albert Jakobson, Edward A. Vosseler* and *Arthur G. Donnelly* for appellants.

*James J. Crowley* for respondent.

Coon, J. Harriet A. Ferris, the decedent, died on October 17, 1951. An instrument in writing purporting to be her last will and testament, dated October 17, 1942, has, without citation or notice to appellants, been admitted to probate in St. Lawrence County, New York. Another will executed by the same decedent, dated June 7, 1951, in which appellants are named as legatees, has been admitted to probate in Kings County, New York. To untangle this legally impossible situation it becomes important for jurisdictional purposes to determine the residence and domicile of decedent at the time of her death. This proceeding was instituted for that purpose, and the Surrogate has adjudged that at the time of her death Harriet A. Ferris was domiciled in and a resident of DeKalb Junction, County of St. Lawrence and State of New York. From that adjudication appellants appeal to this court. By stipulation the sole question presented to the Surrogate and the sole question presented upon this appeal is a determination of the county in which decedent was domiciled at the time of her death.

The petition herein alleges that decedent died a resident of and was domiciled in the town of DeKalb Junction, county of St. Lawrence, New York. The answer denies this allegation. So far as the parties to this proceeding are concerned, this is an original proceeding wherein the allegation of domicile is asserted and denied for the first time. Clearly the burden of proof was upon the petitioner, asserting residence and domicile in St. Lawrence County, to establish that allegation. The Surrogate was in error in ruling otherwise. However, the decision need not turn upon that point, as both sides presented voluminous evidence, and we pass to a consideration of what is established by that evidence.

The law is well settled and well understood as to just what must be proven to establish domicile within any particular jurisdiction. While much has been written on the subject and different words and phraseology appear in court opinions, the ultimate result is always the same, i.e., domicile is residence coupled with an intention that such residence be permanent and

not temporary. Both residence and intention must be present. No single factor is controlling. All of the acts, declarations and conduct of a person, the manner of living, connections, associations, and interests must be considered, and from the over-all picture, intention must be ascertained. (*Dupuy* v. *Wurtz*, 53 N. Y. 556; *Matter of Newcomb*, 192 N. Y. 238; *Matter of Daggett*, 255 N. Y. 243; *Matter of Trowbridge*, 266 N. Y. 283.)

Decedent was eighty-six years of age at the time of her death, and the record discloses that she had lived a very full, active and varied life, during which she had occupied many different places of abode. There is evidence tending to point to some of the usual indicia of residence and domicile in both St. Lawrence and Kings County. In such circumstances " a comparison of one combination of facts with another '' is required, and we must determine whether all the facts tending to show decedent's domicile to have been in Kings County overbalances all the facts tending to show her domicile to have been in St. Lawrence County. (*Matter of Trowbridge*, 266 N. Y. 283, *supra.*) Space does not permit and we deem it unnecessary to relate the voluminous evidence in detail, and we must deal with it in a general way.

Decedent was born in Lisbon, St. Lawrence County, N. Y., on April 9, 1865. After graduation from Potsdam Normal School she taught school at various places in St. Lawrence County until 1898, when she was thirty-three years of age. Concededly, St. Lawrence County is the domicile of origin. From September 15, 1898 to September 8, 1926, and from March 15, 1928 to January 2, 1935, decedent taught school in the New York City public school system and lived at various places in that area. Respondent's brief concedes that in 1898 decedent abandoned her domicile of origin and acquired a domicile of choice in New York City. On February 3, 1926, decedent married Wakin Ferris at Lincoln, Nebraska, and lived there with him until the latter part of 1927. Then she moved with her husband to Brooklyn, N. Y., where she lived with him until the latter part of 1929. She and her husband then moved to Island Park, Long Island, N. Y., into a house which decedent owned, and they continued to live together there until her husband's death in 1937. It is well established and conceded in respondent's brief, that upon her marriage decedent acquired a matrimonial domicile, which continued until her husband's death. The real question then seems to be whether decedent changed her domicile to St. Lawrence County at some time after her husband's death. Following the death of her husband decedent was free to select

her own residence or domicile. (*Matter of Daggett,* 255 N. Y. 243, *supra.*) She continued to live in her own home at Island Park until 1942, when she conveyed one of her houses there to Neil W. Dawley and the other to Claude P. Akin, by deeds which recited her residence as Island Park, N. Y. She then moved to Brooklyn where she lived in various apartments and residential hotels. The fact that she lived in hotels is of no significance, because it is common knowledge that such a practice, particularly for single persons, is prevalent in metropolitan areas. On or about April 1, 1948, she rented an apartment at 70 Clark Street, Brooklyn, for a term of three years. Late in July, 1950, decedent left her apartment at 70 Clark Street, Brooklyn, to spend a vacation at Boothbay, Maine. From there she went to the home of her brother at Canton, St. Lawrence County, N. Y., where she stayed until October 17, 1950. She visited her nephew and his wife at DeKalb Junction for a few days, spent some time in a hospital at Canton and some time in a boarding house at Canton, until May 6, 1951, when she returned to Brooklyn. During this interval in St. Lawrence County, written communications to friends and stepchildren in Brooklyn clearly demonstrate a strong desire and intention to return to Brooklyn, such return being delayed only by the condition of decedent's health. She lived in Brooklyn at a residential hotel until July, 1951, when she went to visit her stepdaughter at Mount Vernon, N. Y. The stepdaughter sustained an injury, and because she was unable to care for decedent properly, placed her in a nursing home next door. By this time, because of advanced age and ill health, decedent needed care. On August 30, 1951, she was taken from the nursing home at her request, by Claude P. Akin, her nephew, and his wife, and went to their home at DeKalb Junction, St. Lawrence County, where she died about a month and a half later on October 17, 1951.

It appears that decedent visited in St. Lawrence County summers, but it likewise appears that she regularly returned to Brooklyn, even after her retirement from teaching. Petitioner-respondent urges that decedent spent her summers in St. Lawrence County and her winters in Florida or California. But it does not appear that she went to Florida or California during 1948, 1949 or 1950. When she did go to Florida or California in earlier years, she did not return to DeKalb Junction, or Canton or St. Lawrence County. She returned to Brooklyn.

Respondent urges as some of the most salient factors in support of his position that decedent registered at Canton for

an absentee ballot in 1946, and that she voted there in 1946 and 1947. While she was ill on August 13, 1951, she wrote to her nephew's wife to " come and get me," and went with them to DeKalb Junction on August 30, 1951. The nephew and his wife testified that she told them, " I want to go to DeKalb Junction and live with you and Claude the rest of my days." There is also evidence that decedent went to DeKalb Junction because she preferred to pay the money for her care to her nephew and his wife rather than to the nursing home. She executed a power of attorney on September 26, 1951, which recited her residence as DeKalb Junction, but it was drawn, including this recitation, before the draftsman had talked with decedent. She had a small account in a bank at Gouverneur, N. Y., which was opened and used only by the nephew under the power of attorney.

On the other hand, it appears that decedent voted in Brooklyn in 1949, personally signed the register, and stated that she had voted from the same address in 1948. She had lived and made friends in Brooklyn for years. She was friendly and affectionate with her stepchildren who resided in the area, while her relations with her brother in St. Lawrence County became strained. She had until her death, a bank account in Brooklyn; she had a brokerage account for about twenty-nine years in New York City; she was a member of and attended the Plymouth Church in Brooklyn, and was active in its affairs; she filed her income tax returns with the Collector of Internal Revenue in Brooklyn, and listed her " home address " therein as Brooklyn; various documents which she executed recite her residence in Brooklyn; her work for many years had been in Brooklyn; her friends were there, and when she executed such a formal document as a will on June 7, 1951, she recited therein that her residence was Brooklyn and named therein a resident of Brooklyn as executor.

The whole pattern of decedent's life for many years points inescapably to the fact that she not only resided in Brooklyn but that she regarded it as her permanent home. Her actions and her oral and written declarations seem to point conclusively to the fact that her sojourns in St. Lawrence County were merely visits or for the purpose of physical care, with the ever present intention of returning to Brooklyn.

The Surrogate seems to have given undue weight to what he considers a lack of qualification to vote in Brooklyn in 1949, although decedent voted there. The column headings on the register for length of residence in the State, county and district call for years, months and days respectively. The inspector of elections filled in " 1½ " in each instance. Even if decedent was

not qualified to vote in Brooklyn it does not demonstrate her residence in St. Lawrence County. Moreover, an examination of the whole registration sheet makes it quite obvious that the inspector disregarded the column headings and that the entries were intended to indicate one and one-half years in each instance.

The testimony of respondent and decedent's nephew and his wife, who may not be said to be disinterested witnesses, as to oral declarations of intention by decedent, is far outweighed by the overwhelming documentary proof and proof of the acts and conduct of decedent, as well as contradictory oral and written declarations. "Acts are regarded as more important than declarations, and written declarations are usually more reliable than oral ones." (*Dupuy* v. *Wurtz, supra,* p. 562.)

The decree should be reversed, on the law and the facts, and the matter remitted to the Surrogate for proceedings in accordance with this opinion, with costs to appellants payable from the estate.

Foster, P. J., Bergan, Halpern and Zeller, JJ., concur.

Decree reversed, on the law and the facts, and the matter remitted to the Surrogate for proceedings in accordance with this opinion, with costs to appellants payable from the estate.

[See 1 A D 2d 793.]