[876 NYS2d 7]

In the Matter of the Estate of Francine Meyer De Camaret Meyer, Also Known as Francine Meyer, Deceased. Patrick A. Gerschel, Appellant, v Andrew W. Heymann et al., Respondents, et al., Defendants.

First Department, March 19, 2009

APPEARANCES OF COUNSEL

*McLaughlin & Stern, LLP*, New York City (*Jon Paul Robbins* of counsel), for appellant.

*Holland & Knight LLP*, New York City (*Charles F. Gibbs, Brian P. Corrigan* and *Faith L. Carter* of counsel), and *Solomon, Blum, Heymann & Stich LLP*, New York City (*Andrew W. Heymann* pro se and of counsel), for respondents.

### OPINION OF THE COURT

RENWICK, J.

After Francine Meyer, a 77-year-old French citizen, died in her Fifth Avenue condominium in New York City on July 28, 2001, her estranged son, Patrick A. Gerschel, who had not seen her for 25 years, commenced this action, claiming forced heirship under French civil law. That law limits the right of a domiciliary of France to disinherit children through lifetime gifts or by will. Plaintiff seeks to recover forced heirship shares from several beneficiaries to whom Ms. Meyer gave lifetime gifts totaling more than $33 million. The main issue on this appeal involves whether New York would apply forced heirship rights under French law to a decedent's inter vivos disposition of New York property.

The following pertinent facts are not in dispute. Francine Meyer was born in France in 1924. Although she remained a French citizen throughout her life, she was truly a "citizen of the world." Ms. Meyer moved to Switzerland in the late 1960s or early 1970s, where she established her residence for more than 20 years. Later, she sold her Swiss home, surrendered her resident permit there, and in 1986 purchased a Fifth Avenue luxury condominium apartment in Manhattan.

Subsequently, around 1996, she also purchased a five-bedroom luxury condominium in Bermuda. In 1997, Ms. Meyer received

a Bermuda certificate of residence. She also obtained a library card and maintained a personal bank account in Bermuda. Her French passport listed Bermuda as her place of residence. Similarly, a certificate issued by the French Consul General in New York indicated that Ms. Meyer was registered as a resident of Bermuda from September 1998 to September 2001.

During the last four years of her life, Ms. Meyer spent much less time in Bermuda than in Europe and the United States, splitting her time equally between New York and Europe. Most of her time in Europe was spent in France, although she neither owned nor rented a residence there. She also spent time in Switzerland, Sweden, Denmark, the United Kingdom, Italy and Germany.

Upon her death on July 28, 2001, decedent Meyer was survived by three children—Marianne Gerschel, Laurent Gerschel, and plaintiff Patrick A. Gerschel. Decedent left various testamentary instruments. She made a will and codicil disposing of her property in Bermuda. This Bermuda will, dated June 25, 1988, stated that she resided in Bermuda. She also made a separate will and two codicils disposing of her property in New York. In the New York will, dated April 20, 2000, she directed that her will be probated in this state and governed by its law, even though she was "domiciled and residing" in Bermuda. In both wills, with the exception of a few specific bequests, decedent left her property in trust for the Emerald Foundation, a New York charity she had established to support medical research.

On March 16; 2006, plaintiff, a resident of New York, commenced this action pursuant to articles 724 and 913-930 of the French Civil Code limiting the right of a domiciliary of France to disinherit children through lifetime gifts or by will.[1] He seeks to recover his alleged forced heirship share from the beneficiaries of various gifts made by decedent during her lifetime.[2] The property involved in the claim consists of gifts totaling more than $15 million that Ms. Meyer made to a charity and various individuals, as well as gifts in excess of $17 million that she

1. Initially, plaintiff commenced this action in Supreme Court, New York County, which transferred it to Surrogate's Court.

2. According to the complaint, defendants Gerard and Andrew Heymann are brothers. Gerard is an investment advisor who began giving decedent advice in the 1980s and Andrew was decedent's attorney who had a "close personal relationship" with her. The other individual defendants were friends of decedent. The defendant foundations were founded by decedent.

made to the Emerald Foundation. The complaint alleges that at the time of her death, decedent was a citizen and domiciliary of France, and that applicable French forced heirship principles required decedent to leave 75% of her "augmented estate" to her three children but she did not do so. The complaint further alleges that French law permits "disadvantaged" heirs to bring an action to recover from those who received gifts or other gratuitous transfers to the extent that these transfers encroached upon the forced heirship share.

In lieu of an answer, the Heymann and Emerald defendants moved for a dismissal of the complaint pursuant to CPLR 3211 (a) (1), (2), (5) and (7), arguing that this case does not invoke French forced heirship claims because plaintiff cannot establish that his mother was a French domiciliary at the time of her death. They further noted that a French forced heirship claim is created by statute, and for purposes of the limitations period for commencing such an action, the accrual date is the date of the decedent's death. Finally, they argued that under French forced heirship laws, plaintiff can directly seek redress against the recipient of an inter vivos gift only if the value of the testamentary disposition is insufficient to satisfy his forced heirship claim. Surrogate's Court granted these defendants' motion to dismiss solely upon the finding that the documentary evidence conclusively established that decedent was not a domiciliary of France at the time of her demise. We affirm for the reason stated, as well as other grounds establishing that the action is untenable as a matter of law.

The parties in this case assumed incorrectly that inter vivos transfers made in New York by a French domiciliary are subject to French forced heirship laws. The Surrogate's Court appears to have operated under this assumption as well, dismissing solely on the ground that the decedent was not domiciled in France at the time of her death. Nevertheless, forced heirship provisions of a civil law jurisdiction like France are inapplicable to inter vivos transfers of property executed in New York, irrespective of whether the transferor's domicile was New York or France. This is because the validity and effect of these transfers, as well as the capacity to effect them, are governed by the law of the state where the property was situated at the time of the transfer.

*Wyatt v Fulrath* (16 NY2d 169 [1965]) illustrates this principle. There, husband and wife, both domiciliaries of Spain—a community property jurisdiction—established a series

of joint tenancy bank accounts in New York. Upon opening the accounts, both executed survivorship agreements spelling out that the funds therein would pass to the survivor. The issue on demise of the husband was whether the law of Spain (the domicile) or New York would control. If Spanish law governed, the wife would take her half share as community property, with at least two thirds of the decedent's half passing to his heirs, since Spanish law provides forced-share rights for children in an amount equal to two thirds of the decedent's assets (*see* Spanish Civ Code art 1000 *et seq.*). The Court of Appeals, relying both on the survivorship agreements and the local public policy of encouraging foreign persons to place assets in New York, held the New York survivorship feature controlled, with the husband's portion passing entirely to the benefit of the wife.

This Court reaffirmed the *Wyatt* principle in *De Werthein v Gotlib* (188 AD2d 108 [1993], *lv denied* 81 NY2d 711 [1993]), holding that New York law, rather than the laws of Argentina, governed the ownership and distribution of two New York "Totten trust" bank accounts a deceased Argentine national had established during his lifetime. The decedent had opened the accounts with his brother named as beneficiary. Upon the decedent's death, his surviving spouse and the daughter of a deceased prior spouse brought separate actions to recover the proceeds of the accounts. The Supreme Court consolidated the actions and granted summary judgment for the brother. On appeal, this Court affirmed. With regard to the surviving spouse's claim, we held that she was not entitled to a "forced share" of the accounts under Argentine law because New York law, rather than the law of the foreign country in which the spouse was domiciled, controlled as to whether she had any interest in the accounts that were created before the marriage and never revoked.

New York law also clearly provides that when a nondomiciliary directs her will to be probated in this state and governed by its law, the forced heirship laws of a foreign state do not apply.[3] Specifically, EPTL 3-5.1 (h) permits a testator the option of having New York law apply to the disposition of property in New York in matters relating to the "intrinsic validity" of the disposition. In *Matter of Renard* (56 NY2d 973 [1982], *affd on op of*

---

**3.** This explains plaintiff's conduct that, on first impression, seems incongruous, in seeking a French forced heirship claim only against the lifetime New York gifts made by his mother, but not with regard to the New York property passing under her New York will.

*Surrogate Millard L. Midonick,* 108 Misc 2d 31 [1981]), the Court ruled that under this statute a French domiciliary could opt for the application of New York law to her New York property, thereby precluding her son from taking a share of it, as the French forced heirship law would have allowed.

We perceive no valid policy distinction that would allow a nonresident testator to avoid French forced heirship claims by invoking New York law with respect to assets physically situated in New York (*id.*), but not with regard to previous inter vivos transfers of assets physically situated here. On the contrary, the policy rationale permitting testamentary freedom from forced heirship rules should also prevail with equal force to inter vivos transfers (*see Wyatt v Fulrath,* 16 NY2d 169 [1965], *supra*; *see also Hutchison v Ross,* 262 NY 381 [1933] [holding that if the transferor has the capacity to make a transfer according to the law of the situs of the chattel at the time of the conveyance, it is immaterial that he does not have that capacity according to the law of the state of his domicile]; *cf. Neto v Thorner,* 718 F Supp 1222 [SD NY 1989] [holding that a Brazilian domiciliary's establishment of a Totten trust account in New York was an election to have the trust funds governed by New York law, even if inconsistent with the law of the testator's domicile]).

Even if plaintiff were to convince this Court that these inter vivos transfers were subject to France's forced heirship laws, plaintiff's action would still require dismissal. While the court below did not address this issue, we cannot ignore that the action is time-barred. Plaintiff's French forced heirship claims are "to recover upon a liability . . . created or imposed by statute" (CPLR 214 [2]), and thus are governed by a three-year statute of limitations. CPLR 214 (2) does not automatically apply to all causes of action in which a statutory remedy is sought, but rather only where liability "would not exist but for a statute" (*Aetna Life & Cas. Co. v Nelson,* 67 NY2d 169, 174 [1986]). Thus, the statute does not apply to liabilities existing at common law that have been recognized or implemented by statute (*id.*). When this is the case, the statute of limitations is the one for common-law causes of action the statute codified or implemented (*see State of New York v Cortelle Corp.,* 38 NY2d 83 [1975]).

Plaintiff's argument that his claim for forced heirship is not created by statute but rather is based on pre-1804 French customs is unavailing. Plaintiff's action exists solely by virtue of

the French Civil Code, which completely replaced all prior law dealing with any matter it covered. Because, under French law, the accrual date for the French action is the date of decedent's death (*see* French Civ Code arts 913-930), the applicable three-year limitations period expired on July 28, 2004. Because plaintiff commenced this action on March 16, 2006, his claim is time-barred (*see McConnell v Carribbean Petroleum Co.*, 278 NY 189 [1938] [holding that the statute of limitations applicable to liabilities created by statute governs when a claim is based on a foreign civil code statute]).

Finally, as Surrogate's Court properly found, the documentary evidence clearly and convincingly established that decedent was not a domiciliary of France at the time of her death. A person may have several residences, but only one domicile. Residence means living in a particular place; domicile means "living in that locality with intent to make it a fixed and permanent home" (*Matter of Newcomb*, 192 NY 238, 250 [1908]), or, as it has more recently been put, "one's principal and permanent place of residence where one always intends to return to from wherever one may be temporarily located" (*Laufer v Hauge*, 140 AD2d 671, 672 [1988], *lv dismissed* 72 NY2d 1041 [1988]; *see also* SCPA 103 [15]; *Rosenzweig v Glen's Truck Serv.*, 136 AD2d 689 [1988]).

An actual change of residence coupled with an intention to abandon the former domicile and acquire a new one may affect domicile (*cf. Rubin v Irving Trust Co.*, 280 App Div 348 [1952], *affd* 305 NY 288 [1953]; *Matter of Johnson*, 259 App Div 290 [1940], *affd* 284 NY 733 [1940]). Intention is an essential factor in effecting a change of domicile (*Newcomb*, 192 NY at 250-251; *Dupuy v Wurtz*, 53 NY 556 [1873]; *Matter of Minsky v Tully*, 78 AD2d 955 [1980]). Intent is determined by the conduct of the person and all the surrounding circumstances (*Matter of Ferris*, 286 App Div 631 [1955], *mot to dismiss appeal granted conditionally* 1 NY2d 860 [1956]), and may be proven by acts and declarations (*Dupuy*, 53 NY at 562). Declarations are not self-serving unless they are made with intent to deceive or circumvent the law (*see Newcomb*, 192 NY at 252). Motives are relevant only insofar as they confirm intention (*id.*).

Measured against this standard, decedent's conduct and declarations establish her clear and unequivocal intent to establish domicile in Bermuda. Not only did she buy a condominium there in 1996, but she later obtained a certificate of residence and listed Bermuda as such on her French passport. Furthermore,

the certificate issued by the French Consul General in New York indicated that decedent was registered as a resident of Bermuda since September 14, 1998, and in all of the documents prepared for decedent, including both her American and Bermudan wills, decedent declared that her residence was her address in Bermuda. In addition, she maintained a personal bank account in Bermuda, obtained a library card there and her death certificate stated that her usual residence was in Bermuda.

Plaintiff makes much of the fact that decedent never relinquished her French citizenship, and spent a significant amount of time in France during the last four years of her life. Under the circumstances of the case, however, decedent's continuing presence in France is not inconsistent with her expressed intent to retain her Bermudan domicile. Indeed, she was not residing in France at the time of her death, nor did she own or rent a home there. In fact, she only owned apartments in New York and Bermuda. There was also no evidence that decedent maintained any personal property or assets in France. There is no indication that she ever considered France her domicile or that she intended to change her domicile to France.

For the foregoing reasons, the order of the Surrogate's Court, New York County (Renee R. Roth, S.), entered on or about November 15, 2007, which granted the motion by defendants Heymann and Emerald Foundation to dismiss the complaint, should be unanimously affirmed, without costs.

SAXE, J.P., NARDELLI, BUCKLEY and MOSKOWITZ, JJ., concur.

Order, Surrogate's Court, New York County, entered on or about November 15, 2007, affirmed, without costs.