OPINION OF THE COURT
Eugene E. Peckham, J.
John M. Thomas, as administrator c.t.a. of this estate, has petitioned the court pursuant to SCPA 1809 to determine the validity of two claims filed under SCPA 1803 by Fahime “Lily” McLaughlin, former spouse of decedent. Before the court is a motion to dismiss the claims as barred by the statute of limitations and for summary judgment under CPLR 3211 (a) (5) and 3212.
Decedent died domiciled in Endicott, New York on June 30, 2005. His will was admitted to probate by this court on August 29, 2007. John and Fahime “Lily” McLaughlin were divorced in California on November 18, 2002 and their marital settlement agreement was incorporated in the divorce decree. (Exhibits F, G to affidavit of Robert Jones, Esq. dated Feb. 1, 2010.) Lily McLaughlin is and was always domiciled in Villa Park, California. Exhibit A to the marital settlement agreement provides that John McLaughlin shall receive “[a]ll stock, fixtures, inventory, *302 furnishings associated with the business known as ‘The Book Sail,’ located within the store premises, storage units and stored at the New York properties.” The Book Sail was a store operated by decedent dealing in movie memorabilia, artworks, books and collectibles.
The first claim filed May 7, 2008 is for $110,990.07, alleged to be due to Lily pursuant to an agreement between her and decedent dated July 3, 2004 (exhibit 40 to affidavit of Philip Artz, Esq. filed Feb. 1, 2010). This agreement is alleged to modify an earlier agreement between the parties dated August 23, 2002 (exhibit B to Lily McLaughlin affidavit dated Mar. 5, 2010). This claim is in two parts: (1) $100,000 paid to reimburse Dr. Sina Eftekharzadeh pursuant to the July 3, 2004 agreement, and (2) $10,990.07 to pay off a credit card pursuant to the August 23, 2002 agreement. This latter payment was made on June 17, 2003 (exhibit C to Lily McLaughlin affidavit dated Mar. 5, 2010).
The second claim, also filed May 7, 2008, is for the return of “parts of a Gypsy wagon” and “sculpture of the head of an Indian.” Lily testified at her deposition that these items were purchased by decedent’s mother, Jean McLaughlin, as a gift. Lily alleged these items belonged to her, but were being held by decedent at her request and for her benefit. Although she admitted neither items was mentioned in the property division in the marital settlement agreement, nor were they in her possession after the divorce (deposition of Fahime “Lily” McLaughlin, transcript at 189-232).
Decedent intended to use these items together with many other collectibles owned by him to establish a museum. (Matter of McLaughlin, Sur Ct, Broome County, Aug. 24, 2007, File No. 2005-0586.) Lily was in favor of establishing the museum, and knew that decedent had possession of the parts of the Gypsy wagon, arrowheads and other collectibles and that he had brought them to his home in Endicott, New York (deposition transcript at 189-232). Only after his death, when the museum was not established, did she demand the return of the items.
Judge Thomas, in his affidavit dated February 1, 2010, stated the Gypsy wagon was sold by decedent on August 3, 2003, attaching a copy of a bill of sale (exhibit H). He also stated he did not find any sculpture of an Indian head, but that decedent did have a collection of Indian arrowheads located at his cottage in Nelson, Madison County, New York.
*303 Discussion
Summary judgment is granted dismissing the claim for $110,990.07. By application of CPLR 202 and California Code of Civil Procedure § 366.2, a one-year statute of limitations applies which has expired. However, summary judgment is denied for the turnover pursuant to SCPA 2105 of the arrowheads and Gypsy wagon. As will be discussed, turnover or replevin of actual tangible property is governed by the three-year statute of limitations in CPLR 214 (3).
There is an obvious reason for the differing result in the two claims. The first is a claim on a contract or note for which the recovery would be money damages. Therefore, as pointed out in Global Fin. Corp. v Triarc Corp. (93 NY2d 525 [1999]), the economic injury of the money loss occurs where the claimant resides. The law of the state where the person resides should govern the claim for such a monetary recovery.
On the other hand, the recovery sought in a replevin or turnover action is the actual return of the actual tangible property. The state where tangible property is physically located, like real property, has a unique interest in determining who owns property located within its borders. The state of location will also want to prevent a breach of the peace from being committed in a physical repossession effort within its borders. The law of the state where tangible personalty is physically located should govern a claim for turnover or recovery of that property.
Summary judgment is a drastic remedy and may only be granted where there is no triable issue of fact. (Phillips v Kantor & Co., 31 NY2d 307 [1972].) If issues of fact are found, summary judgment must be denied. (Zuckerman v City of New York, 49 NY2d 557 [1980].) Issue finding, rather than issue determination, is the key. (Sillman v Twentieth Century-Fox Film Corp., 3 NY2d 395 [1957].) The affidavits and other exhibits submitted on the motion must be scrutinized in the light most favorable to the party opposing the motion. (Robinson v Strong Mem. Hosp., 98 AD2d 976 [4th Dept 1983].)
Respondent’s claim for $110,990.07 is essentially a reverse discovery or turnover proceeding pursuant to SCPA 2105. Since the claim is based in part upon an alleged contract or agreement between decedent and respondent to repay $100,000, the six-year statute of limitations in CPLR 213 would ordinarily apply-
Another part of the claim is for $10,990.07 that respondent paid on a credit card on June 17, 2003. (Exhibit C to Lily Me *304 Laughlin affidavit dated Mar. 5, 2010.) In her deposition testimony, Lily was unable to say who made the charges on the credit card or what they were for. (Deposition transcript at 167-172.) Inasmuch as this debt was not listed as chargeable to decedent in the marital settlement agreement between the parties dated November 18, 2002 (exhibit A to affidavit of John M. Thomas dated July 14, 2008), it is unclear if this is even an obligation of decedent’s. Assuming it was his obligation, the liability accrued on June 17, 2003 or at the latest on June 30, 2005, when he died without making payment.
Petitioner claims, however, that the New York borrowing statute in CPLR 202 causes the one-year statute of limitations set forth in California Code of Civil Procedure § 366.2 to be applicable. The statute provides:
“If a person against whom an action may be brought on a liability of the person, whether arising in contract, tort, or otherwise, and whether accrued or not accrued, dies before the expiration of the applicable limitations period, and the cause of action survives, an action may be commenced within one year after the date of death, and the limitations period that would have been applicable does not apply.” (Cal Code Civ Pro § 366.2 [a].)
New York generally applies a “grouping of contacts” analysis to conflict of laws situations. (Auten v Auten, 308 NY 155 [1954]; Matter of Allstate Ins. Co. [Stolarz — New Jersey Mfrs. Ins. Co.], 81 NY2d 219 [1993].) “The purpose of grouping of contacts is to establish which State has ‘the most significant relationship to the transaction of the parties.’ ” (Zurich Ins. Co. v Shearson Lehman Hutton, 84 NY2d 309, 317 [1994].) However, a leading case on the borrowing statute, Global Fin. Corp. v Triarc Corp. (93 NY2d 525 [1999]), is an exception to the grouping of contacts approach in a contract case. In that case, the Court of Appeals “held, the claim should be deemed to accrue where the plaintiff ‘sustained its alleged injury’, which is the state in which the plaintiff experiences the economic loss engendered by the breach.” (Siegel, NY Prac § 57, at 81 [4th ed].) For Lily, that would be California where she is and always has been domiciled and also the state where the contract was executed. (Exhibit C to Lily McLaughlin affidavit dated Mar. 5, 2010; deposition transcript at 139-141, 178.)
The claim for $110,990.07 is an economic loss or injury to respondent. “When an alleged injury is purely economic, the *305 place of injury usually is where the plaintiff resides and sustains the economic impact of the loss.” (Global Fin. Corp. v Triarc at 529.) A number of Appellate Division decisions have applied this principle to hold that the economic injury to an individual occurs at the place of domicile and, thus, the statute of limitations at the place of residence is applicable. (Lema v Bank of N.Y., 60 AD3d 486 [1st Dept 2009]; Aronitz v PricewaterhouseCoopers LLP, 27 AD3d 393 [1st Dept 2006]; Proforma Partners v Skadden Arps Slate Meagher & Flom, 280 AD2d 303 [1st Dept 2001].)
The economic injury to respondent occurred in California where she resides. At the latest, her cause of action accrued when decedent died on June 30, 2005 without making payment pursuant to the contract dated July 3, 2004. Therefore, her claim for money damages filed May 7, 2008 is barred by the one-year statute of limitations in section 366.2 of the California Code of Civil Procedure.
The fact that the McLaughlin estate is being administered in New York is irrelevant since an appellate court in California has held that section 366.2 applies to bar a contract claim by California residents against the estate of a decedent being administered outside of California in Texas. (Farb v Superior Ct., 174 Cal App 4th 678, 94 Cal Rptr 3d 586 [2009].) In Matter of Smathers (153 Misc 132, 149 [Sur Ct, Westchester County 1934]), it was held that an action could not be maintained against the estate of a New York decedent on a bond and mortgage on real property in California. The court applied the predecessor statute to CPLR 202 to hold that because the action was barred by the statute of limitations in California, it was also barred against the New York decedent’s estate.
Summary judgment is granted dismissing the claim for $110,990.07.
Turning to Lily’s claim for return of the Gypsy wagon parts and the Indian arrowheads, it is essentially a replevin action seeking turnover of a chattel under SCPA 2105. In a replevin or quiet title action, the grouping of contacts approach to conflict of laws continues to apply. Global Fin. Corp. v Triarc Corp. (supra) is inapplicable because it involved a contract action, not replevin of tangible chattels, which is a type of tort. (23 NY Jur 2d, Conversion § 88, at 408.) In New York, a replevin action is governed by the three-year statute of limitations in CPLR 214 (3).
The law that applies is the law of the state where the tangible personal property is located. (Wyatt v Fulrath, 16 NY2d 169 *306 [1965]; Goetschius v Brightman, 245 NY 186 [1927]; Hutchison v Ross, 262 NY 381 [1933]; De Werthein v Gotlib, 188 AD2d 108 [1st Dept 1993]; Matter of Meyer, 62 AD3d 133 [1st Dept 2009]; 19A NY Jur 2d, Conflict of Laws § 26, at 549.)
Petitioner argues that the holding of these cases has been limited by Matter of Clark (21 NY2d 478 [1968]) and Matter of Crichton (20 NY2d 124 [1967]). In both cases the question was which state’s law should apply to determine a surviving spouse’s right of election, the state of marital residence or the state where the property was located. In both cases, the Court of Appeals held it would be the state of residence. Such holding does not negate the general rule that ownership of tangibles is governed by the law of the state where they are located. Rather, the applicability of the right of election is determined by the state of residence and applies to the assets of the decedent’s estate, tangible or intangible, wherever located.
Under a grouping of contacts analysis, New York has the “most significant relationship to the transaction.” John McLaughlin died domiciled in New York, his will was probated in New York and his estate is being administered in New York. The Indian arrowheads were located at decedent’s cottage in New York. (Affidavit of John M. Thomas, dated Feb. 1, 2010, para 7.) As stated in New York Jurisprudence, “tangible personal property has a legal situs in the state where it is physically located.” (19A NY Jur 2d, Conflict of Laws § 26, at 549.) Just as with real property, the state where tangible property is located has the greatest interest in controlling its disposition, unlike intangibles and contract rights which have no fixed location, or in this electronic age are only located somewhere in a computer memory.
Lily McLaughlin testified that she knew both the arrowheads and the parts to the Gypsy wagon were in decedent’s possession. The arrowheads were sent to New York in 1993 to become part of a museum decedent intended to establish (deposition transcript at 230). She agreed with establishing the museum (deposition transcript at 189-232). These items may also have been part of the inventory of The Book Sail. In the marital settlement agreement it was noted that items were stored in New York. (Exhibit G to affidavit of Robert R. Jones dated Feb. 1, 2010.)
Lily testified both items were a gift from decedent’s mother. (Deposition transcript at 192-193, 218-219.) In California, this could make them community property. However, she also testi *307 fiéd they were sent to New York after a flood at the marital residence in 1993 with her consent and were not in her possession after the divorce. (Deposition transcript at 216-217, 230-232.) Inasmuch as the arrowheads were either community property sent to New York with Lily’s consent or were part of decedent’s ownership of The Book Sail inventory, they were lawfully in his possession in New York. However, the Gypsy wagon was sold by decedent on August 3, 2003 for $38,251. (Exhibit H to Thomas affidavit dated Feb. 1, 2010.)
Where a person has lawful possession of chattels, a demand for return is required before an action for replevin may be commenced. The statute of limitations begins to run upon demand. (Solomon R. Guggenheim Found. v Lubell, 77 NY2d 311 [1991]; Matter of Flamenbaum, 27 Misc 3d 1090 [Sur Ct, Nassau County 2010].) California law is the same: where a person has lawful possession of property, a demand for its return and a refusal is necessary before a suit for possession is commenced and the statute of limitations begins to run. (16A Cal Jur 3d, Creditors Rights & Remedies §§ 473, 481; Commercial & Sav. Bank of Stockton v Foster, 210 Cal 76, 290 P 583 [1930]; Latta v Tutton, 122 Cal 279, 54 P 844 [1898].) California also has a three-year statute of limitations for actions for specific recovery of personal property or replevin. (Cal Code Civ Pro § 338 [c].)
In this case, demand for return of the wagon and arrowheads was made by respondent in her claim filed May 7, 2008. This litigation was actually commenced by petition under SCPA 1809 by the administrator c.t.a. filed July 15, 2008 with an answer filed August 28, 2008. Subsequently, an amended petition was filed November 9, 2009 and an amended answer November 24, 2009. All of these filings were within three years of the original demand for possession of the chattels (CPLR 214 [3]), and thus timely within the statute of limitations.
Petitioner argues the borrowing statute, CPLR 202, and the one-year limitation period of California Code of Civil Procedure § 366.2 also apply to the tangibles located in New York. The basis of this argument is that replevin is a tort and that a tort cause of action accrues at the place of injury, which is claimed to be the California residence of Lily McLaughlin.
Actually, the place of injury is New York since the chattels were lawfully located in New York, either pursuant to the transfer of The Book Sail inventory in exhibit A of the marital settlement agreement or by Lily’s admitted agreement that *308 they were in New York to be used in establishing the museum. (Deposition transcript at 192-232.) The cause of action for recovery of the chattels only accrued on the filing of the claim on May 7, 2008 and the denial of the claim by the administrator c.t.a.
But even if we assume the injury regarding the chattels took place in California, the result is the same because California Code of Civil Procedure § 366.2 applies only to debts of the decedent and not to an action to recover specific real or personal property. In a carefully reasoned decision, it was held in In re Estate of Yool (151 Cal App 4th 867, 60 Cal Rptr 3d 526 [2007]) that a contract claim to recover title to property was not governed by section 366.2. The court cited four reasons why the action to quiet title to property by means of a resulting trust was not governed by the one-year limitation period. First, the legislative history of section 366.2 shows that it applies to a debt of the decedent and not a replevin or quiet title action to recover specific property. Second, section 366.2 applies to a “liability of the person” and a claim to title of property would not mean “a wronged party can seek satisfaction out of the wrongdoer’s assets” (151 Cal App 4th at 875, 60 Cal Rptr 3d at 532). Third, section 9000 (b) of the California Probate Code provides that a “[c]laim does not include a dispute regarding title of a decedent to specific property alleged to be included in the decedent’s estate.” The decision points out this definition “closely tracks” the liability of the person language of section 366.2 and thus “expressly excludes from its ambit any dispute regarding decedent’s title to specific property” (151 Cal App 4th at 876, 60 Cal Rptr 3d at 532-533). Lastly, “Section 366.2 specifically contemplates an action that may be brought against a person prior to his or her death” (151 Cal App 4th at 876, 60 Cal Rptr 3d at 533). As in Yool, respondent had no claim against decedent prior to his death since she agreed and consented that he could take the items of personal property to New York to put into his contemplated museum (deposition transcript at 192-232). Only after his death when the museum was not created did her claim ripen. (See para 3 of agreement dated Aug. 23, 2002, exhibit B to McLaughlin affidavit dated Mar. 5, 2010.)
In other cases, California appellate courts have also held that an action for recovery of specific property is not a claim against the estate. (Arguello Estate Protective Assn. v Crofton, 118 Cal App 2d 511, 258 P2d 97 [1953]; In re Dabney’s Estate, 37 Cal 2d 672, 234 P2d 962 [1951]; In re Dutard’s Estate, 147 *309 Cal 253, 81 P 519 [1905].) In Dutard, claimants sought a portion of the property of a decedent’s estate consisting of a ranch, livestock and other personal property. It was held that the claims for specific property did not make the claimant creditors of the estate. Thus, section 9000 (b) of the California Probate Code is a codification of existing California law that an action to recover specific property does not create personal liability of the decedent for a debt, which would make the one-year limitations period of section 366.2 applicable. Rather, the three-year limitations period of California Code of Civil Procedure § 338 would be applicable, which is the same time limit as New York.
The result is that the action to recover the chattels, the Indian arrowheads, was timely brought within three years under SCPA 2105 and CPLR 214 (3). The motion to dismiss and for summary judgment based upon the statute of limitations is denied as to the Indian arrowheads.
Respondent has offered no credible evidence to refute the bill of sale (exhibit H to Thomas affidavit dated Feb. 1, 2010) that the Gypsy wagon was sold on August 3, 2003, which is after the divorce. Summary judgment is granted dismissing the claim for the Gypsy wagon.
Respondent also raises procedural issues that a bill of particulars and notice to produce were not fully answered by petitioner. CPLR 3212 (f) and 3211 (d) provide that if it should appear from affidavits submitted in opposition to such motion that “facts essential to justify opposition may exist but cannot then be stated, the court may deny the motion or may order a continuance to permit affidavits to be obtained.” The affidavit raising this issue must be from someone with personal knowledge of the facts and “must make an evidentiary showing supporting this conclusion, mere speculation or conjecture being insufficient.” (Preferred Capital v PBK, Inc., 309 AD2d 1168, 1169 [4th Dept 2003]; Mazzaferro v Barterama Corp., 218 AD2d 643 [2d Dept 1995].)
Discovery is claimed to be needed due to the failure of petitioner to assert in his bill of particulars the exact section of the statute of limitations that might be applicable and for the administrator c.t.a. to produce documents allegedly delivered to him by respondent. The issue of the statute of limitations is a question of law, not fact. No explanation is given as to why the documents, or copies thereof, sought to be discovered from petitioner which respondent claims to have given to him are within petitioner’s exclusive knowledge and are not in respon *310 dent’s possession. These claims for further discovery are a mere fishing expedition, especially since there has already been extensive discovery and depositions over the two-year period since the claims were filed. Further, the affidavit making the request for additional discovery is by respondent’s attorney and is not included in respondent’s own affidavit. (Affidavit of Philip J. Artz, Esq., dated Mar. 8, 2010, paras 7-10; Fahime McLaughlin affidavit dated Mar. 5, 2010.) An affidavit by an attorney without personal knowledge of the facts is insufficient to support a request for further discovery. (Levy, King & White Adv. v Gallery of Homes, 177 AD2d 967 [4th Dept 1991].) Respondent has been able to submit a complete response to the motion. Respondent has not demonstrated that further discovery would reveal any additional facts to justify opposition to the motion. (Scofield v Trustees of Union Coll, in Town of Schenectady, 267 AD2d 651 [3d Dept 1999].) The request to dismiss or stay this motion to permit further discovery is denied.